845 So.2d 939 (2003)
Mark Alan DUDDLES, Appellant,
v.
STATE of Florida, Appellee.
No. 5D01-3876.
District Court of Appeal of Florida, Fifth District.
April 25, 2003.
*940 James B. Gibson, Public Defender, and Rebecca M. Becker, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Lori N. Hagan, Assistant Attorney General, Daytona Beach, for Appellee.
THOMPSON, C.J.
Mark Alan Duddles appeals his convictions for two counts of sexual battery on a victim less than twelve years of age and contends that the trial court erred by denying his motion to suppress a statement that he made to an investigator. We affirm.
Duddles was charged by information on 15 February 2001 with two counts of sexual battery on a victim less than twelve years of age and one count of lewd and lascivious molestation of a victim less than twelve years of age. At the suppression hearing, Detective Jimmy Post testified that he was assigned to investigate allegations of a sexual battery on a minor, and Duddles was the suspect. Post testified that after he spoke with the victim and her mother, he went to Duddles's residence at 3:50 a.m. Post told Duddles that the victim had made some allegations, and he wanted Duddles's side of the story. Duddles invited Post into his home. Post testified that he went to Duddles's house at 3:50 a.m. because the victim and her mother lived with Duddles, and he did not want to alert Duddles prior to speaking to him that the police had been contacted. Post admitted that Duddles was not required to speak with him that night, but he did not convey that to Duddles.
During the taped conversation, Duddles admitted to rubbing the victim in her genital area and admitted that he was possibly naked under the covers. Duddles agreed that Post told him that he would not be arrested that night. Duddles agreed again that Post had done nothing to scare or threaten him. At the end of the taped statement, Duddles stated that Post had not threatened him, scared him, or promised him anything. Duddles did not testify at the suppression hearing.
For the following reasons, the trial court found that the confession was not coerced because:
a. The officer was dressed in plain clothes.
b. The investigating officer was invited into the Defendant's home by the defendant.
c. The officer did not restrict the movement of the Defendant or make it so he was not free to leave.
d. Miranda warnings were not necessary, as the Defendant was not in custody.
e. The investigative techniques used by the officer did not create a coercive atmosphere.
f. The officer remained calmed and relaxed throughout the interview.
g. The defendant acknowledged at the conclusion of the interview that he did not feel that he was in custody.
h. Throughout the interview, the Defendant appeared alert and coherent and never requested the interview to cease.
Duddles contends that when Post came to his home for a statement, he did the best that he could to accommodate the officer, and under the circumstances, the statement was not voluntary and Miranda[1] warnings should have been given.
*941 Miranda warnings are required only when an individual is undergoing actual custodial interrogation by the police. State v. Rodriguez, 785 So.2d 759, 761 (Fla. 3d DCA 2001). Under Miranda, custodial interrogation does not occur unless an officer initiates the questioning of an individual who has been taken into custody or is otherwise deprived of his freedom of action in any significant way. See Rhode Island v. Innis, 446 U.S. 291, 298, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).
In determining whether a suspect is in custody, the appellate court must conduct a de novo review. See Connor v. State, 803 So.2d 598 (Fla.2001). It must be determined whether under the totality of the circumstances, a reasonable person in the suspect's position would feel a restraint of his or her freedom of movement in that one would not feel free to leave or terminate an encounter with the police. See Voorhees v. State, 699 So.2d 602 (Fla. 1997). Factors to be considered are:
1) the manner in which the police summon the suspect for questioning;
2) the purpose, place, and manner of the interrogation;
3) the extent to which the suspect is confronted with evidence of his or her guilt;
4) whether the suspect is informed that he or she is free to leave the place of questioning.
Ramirez v. State, 739 So.2d 568, 574 (Fla. 1999).
Regarding the first and second factors, 3:50 a.m. is an unusual time to pay a visit, but Post testified on cross examination that he arrived at that time because the victim and her mother lived with Duddles, and he did not want to alert Duddles in advance that the police had been contacted. During the encounter, Post was dressed in plain clothes, explained that the victim had made allegations, and asked Duddles for his side of the story. Duddles invited Post into his home, and they sat at a table in the living room. Post testified that he did not handcuff Duddles during the interrogation. Also, Post informed Duddles that he would not be arrested that night.
State and federal authorities support the contention that usually when one invites an officer into one's home for questioning, the person is not considered to be in custody during the questioning. See Patterson v. State, 659 So.2d 1014 (Ala. Crim.App.1995) (the fact that the interrogation occurred inside the accused's house is a factor tending to indicate that the interview was noncustodial); see also Com. v. Busch, 713 A.2d 97, 101 (Pa.Super.Ct.1998)(defendant was not in custody where the defendant invited two police officers into his home, the three sat in the living room, the defendant was not reluctant to answer questions, and there was no claim that he was intimidated by the police); U.S.A. ex rel. Johnson v. Lane, 573 F.Supp. 967 (N.D.Ill.1983)(the record contained ample evidence that defendant was not in custody when questioned in the familiar surroundings of his home, rather than a police station); but see U.S. v. Griffin, 922 F.2d 1343 (8th Cir.1990) (defendant was in custody where officers interrogated him in his home, was not informed that he was not under arrest or free to request that the officers leave, was told that he was to stay in the officer's view at all times, and was escorted throughout his house).
As for the third factor, although Post informed Duddles that the victim had made allegations against him, he asked Duddles for his side of the story, and the record does not indicate that there was coercion, intimidation, or trickery. The record supports the trial court's finding that Post remained relaxed and calm during *942 the interview. See Rodriguez, 785 So.2d at 761.
Regarding the fourth factor, as previously discussed, a person who invites officers into his home for an interview usually is not considered to be in custody. Further, Post told Duddles that he would not be arrested that night. Post was dressed in plain clothes and did not display a weapon the night of the interrogation. Also, the trial court noted in its order denying the motion to suppress that Post remained calm and relaxed during the interview. See Johnson, 573 F.Supp. at 969 (defendant was not in custody where he was never told that he was not free to leave, nor were there any words implying that he could not leave, only two officers were present and did not display weapons, and trial court found that officers were non-aggressive and polite throughout their investigation); see also Loredo v. State, 836 So.2d 1103 (Fla. 2d DCA 2003) (defendant was not in custody at the time of his interrogation at the police station where defendant was told that he was not under arrest, could leave at any time, and was given directions for exiting the station).
Duddles cites Ramirez v. State, 739 So.2d 568 (Fla.1999), but Ramirez is distinguishable. In Ramirez, the police used "trickery" to obtain a confession from Ramirez after learning from the co-defendant that Ramirez robbed and murdered the victim. Id. at 576. Without reading Ramirez his Miranda rights, the police confronted Ramirez at his home and informed Ramirez that they had knowledge of a conversation between Ramirez and the co-defendant. Id. at 572. Ramirez then turned over the stolen items, and the deputy asked Ramirez if he would be willing to come to the sheriff's office, where he was later interrogated. Id. Finally, after Ramirez admitted to committing the crimes, a detective informed Ramirez of his Miranda rights. Id. In the instant case, Post did not use trickery to secure a confession from Duddles. Post explained that Duddles would not be arrested that evening, and he stated that he wanted Duddles's side of the story. Duddles invited Post into his home and stated that he was not threatened or coerced by Post.
The trial court's order on the motion to suppress was supported by competent, substantial evidence, and is affirmed.
AFFIRMED.
SAWAYA and TORPY, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).