BROWNING. J.
A petition charged that on or about October 11, 2002, 12-year-old J.S.R., a/k/a J.C.M. (Appellant), “did unlawfully, willfully and maliciously, injure or damage, or place graffiti thereon or commit an act of vandalism” upon a windshield belonging to Niki Bridges, in violation of section 806.13(l)(b)2, Florida Statutes (2002). Appellant moved to suppress incriminating statements made by him while in police custody without first being informed of his Miranda rights.[1] After a hearing, the trial court denied the motion to suppress on the ground that the facts did not give rise to a custodial interrogation requiring Miranda rights to be given. Specifically, the court found that Appellant had not been handcuffed, interrogated, or in any way subjected to a restraint on his liberty. After an adjudicatory hearing, the court withheld adjudication and placed Appellant on probation. Appellant contends that the trial court reversibly erred by denying the motion to suppress, by allowing into evidence Appellant’s confession without making a specific finding that the confession was freely and voluntarily given, and by allowing into evidence the confession where the State failed to prove the corpus delicti of the crime. Concluding as a matter of law that Appellant was in police custodial interrogation, so as to trigger the Miranda requirements, and that the erroneous admission of his incriminating statements is not harmless, we reverse the juvenile disposition order and sentence and remand for further proceedings. See J.G. v. State, 883 So.2d 915 (Fla. 1st DCA 2004).

Facts

The facts adduced at the suppression hearing are undisputed. The sole witness was Officer Biletnikoff, of the Panama City Police Department, who testified as to the following events occurring on October 11, 2002. Officer Biletnikoff lived on the same street as the victim, Ms. Bridges, who had contacted the officer several times about problems she was having with some of her neighbors. Specifically, the victim reported that Appellant and his brother had been harassing her. On the date in question, Officer Young was called to the victim’s residence in response to a report that someone had damaged a car windshield by what appeared to be a BB gun shooting. Officer Young contacted Appellant’s father, but their conversation apparently “did not go well.” The officer left the residence, “ran” Appellant’s father’s name through the police records, and discovered that the father was wanted by law-enforcement authorities in South Florida. Aware that Appellant’s father was going fishing at St. Andrews Marina and that their initial contact had not gone smoothly, Officer Young called for assistance from Officers Biletnikoff and Bryant and headed to the *576 marina, where they found Appellant and his father.
In Appellant’s presence, Officers Young and Biletnikoff arrested the father on the outstanding arrest warrant, placed him in the back of a patrol car, and transported him to jail. They looked for someone to retrieve Appellant and to pick up the father’s car, which contained fishing equipment and could not be secured. Appellant, who had become very upset over his father’s arrest, stood around as the officers pondered what to do. Officer Bryant was called away from the scene. Officer Bilet-nikoff testified that Appellant was too young to drive, and the police eommend-ably refused to leave Appellant alone in that part of town after sundown. Appellant asked the police to call his older brother, who was returning from Alabama and agreed to pick up Appellant. Officer Biletnikoff testified that he remained at the marina with Appellant “for a long time.” Appellant was told he was going home but would have to wait for his brother to get him. During this period, Appellant was not handcuffed, was not placed in the back of a patrol car, and was not arrested.
Eventually, Officer Bryant returned to the marina area and, referring to the incident involving Ms. Bridges, announced: “We know he did it.” When Officer Bilet-nikoff asked: “How do we know this?” Officer Bryant answered that the victim had gotten so tired of being bothered that she had put a videocamera in her window and had captured everything on tape. Officer Biletnikoff then looked at Appellant and asked him: “What am I gonna see on this tape when I look at it?” and Appellant answered: “You’re gonna see me doing it.” When the officer asked: “Do what?” and indicated to Appellant to show him, Appellant held up his hand as if he had a pistol or BB gun. When the officer asked if that is what Appellant had done, Appellant answered affirmatively.
On cross-examination, Officer Biletnikoff was asked whether Appellant had been free to leave the marina area as he and the officer awaited the brother’s arrival. The officer answered: “If he wanted to go, he could go, as long as a parent came and got him. We’re not gonna let him walk out of there.” That is, the officers refused to allow a 12-year-old to leave unescorted because of safety concerns in that neighborhood at night. When Officer Biletni-koff was asked whether Appellant had been “in custody” at that time for his own safety, the officer responded: “Waiting for his brother to come, yeah.” The officer did not believe Appellant was ever advised of his Miranda rights.

Law

Our review of the denial of the motion to suppress is a mixed question of law and fact that ultimately determines constitutional issues. See Connor v. State, 808 So.2d 598 (Fla.2001); Perez v. State, 620 So.2d 1256 (Fla.1993). We have de novo review of the trial court’s application of the law to the findings of fact. See Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Under this standard, “we review findings of historical fact only for clear error” and “give due weight to inferences drawn from those facts by resident judges.” Id.; see Connor, 803 So.2d at 608; State v. Shaw, 784 So.2d 529 (Fla. 1st DCA 2001); State v. Setzler, 667 So.2d 343, 346 (Fla. 1st DCA 1995). Police custodial interrogation invokes the need to provide Miranda warnings. See Miranda, 384 U.S. at 444, 86 S.Ct. 1602; J.G., 883 So.2d 915, 922; Duddles v. State, 845 So.2d 939, 941 (Fla. 5th DCA 2003). Whether Appellant was in custody when he made the admissions is a mixed question of fact and law. See Thompson v. Keohane, 516 U.S. *577 99, 106-07, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995); J.G., 883 So.2d 915, 922. “Custody for purposes of Miranda encompasses not only formal arrest but any restraint on freedom of movement of the degree associated with formal arrest.” Ramirez v. State, 739 So.2d 568, 573 (Fla.1999). An objective test is used to determine whether an individual is in custody. See Traylor v. State, 596 So.2d 957, 966 n. 16 (Fla.1992). That is, “[t]he proper inquiry is not the unarticulated plan of the police, but rather how a reasonable person in the suspect’s position would have perceived the situation.” Davis v. State, 698 So.2d 1182, 1188 (Fla.1997). Four factors shape the determination of whether a suspect is in custody: (1) the manner in which police summon the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect is confronted with evidencé of his or her guilt; and (4) whether the suspect is informed that he or she is free to leave the place of questioning. See Mansfield v. State, 758 So.2d 636, 644 (Fla.2000); Ramirez, 739 So.2d at 574; J.G., 883 So.2d 915, 922.
A consideration of these four factors in Appellant’s case leads inescapably to the legal conclusion that he was in police custody for Miranda purposes when he made the incriminating remarks. The undisputed testimony indicated that Appellant was the subject of a police investigation into who had damaged Ms. Bridges’ windshield. He was detained alone at the marina after his father’s arrest. Ostensibly for the young man’s own safety, the police kept Appellant there until his older brother arrived. After Officer Bryant fabricated the existence of a videotape purporting to show Appellant committing the charged offense, Officer Biletnikoff initiated the questioning that elicited Appellant’s incriminating statements and actions. Questioning Appellant in that context undoubtedly constituted police custodial interrogation, for the officers knew or should have known their words or actions were “reasonably likely to elicit an incriminating response.” Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); see J.G., 883 So.2d 915, 926; Loredo v. State, 836 So.2d 1103, 1105 (Fla. 2d DCA 2003). Under those circumstances, the United States and Florida Constitutions required the authorities to advise Appellant of his Miranda rights, including, inter alia, the right to remain silent and the right to court-appointed counsel if Appellant could not afford to hire his own attorney. These rights were not waived. See Miranda, 384 U.S. at 444, 86 S.Ct. 1602 (stating that defendant may waive Miranda rights if waiver “is made voluntarily, knowingly and intelligently”). Because Appellant was not informed of his Miranda rights before being questioned by the police about the purported videotape, his statements should have been suppressed. See Mansfield, 758 So.2d at 644. The trial court erred as a matter of law in concluding that the facts did not constitute custodial interrogation.
“The erroneous admission of statements obtained in violation of Miranda rights is subject to harmless error analysis.” Caso v. State, 524 So.2d 422, 425 (Fla.1988); Mansfield, 758 So.2d at 644; J.G., 883 So.2d 915, 925. Error is harmless if the reviewing court can say beyond a reasonable doubt that “the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.” State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986). The instant record compels the conclusion that the admission of Appellant’s statements in violation of the Miranda requirements is not harmless. Accordingly, we *578 REVERSE the disposition order and sentence and REMAND for farther proceedings.
BENTON and POLSTON, JJ., Concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).