911 So.2d 796 (2005)
Gregory Dean EVANS, Appellant,
v.
STATE of Florida, Appellee.
No. 1D03-5088.
District Court of Appeal of Florida, First District.
February 22, 2005.
Rehearing Denied March 31, 2005.
*797 Curtis S. Fallgatter of Fallgatter & Farmand, P.A., Jacksonville, for Appellant.
Charles J. Crist, Jr., Attorney General, Edward C. Hill, Jr., Special Counsel, and Alan R. Dakan, Assistant Attorney General, Tallahassee, for Appellee.
PADOVANO, J.
The defendant, Gregory Evans, seeks reversal of his conviction and sentence for possession of child pornography. He contends that the trial judge erred in denying his motion to suppress a confession and other evidence for two reasons: (1) the officers violated his constitutional rights by failing to answer a question about the need for counsel, and (2) the officers tricked him into making the statement by promising not to arrest him. We conclude that the officers had no duty to answer questions about the need for counsel because the defendant was not in custody at the time of the interview, and that the statement was not prompted by any improper action by the police. For these reasons, we affirm.
The defendant became a suspect in a child pornography ring when he was identified as a member of an internet chat group known as "Boyzilla." Agent Douglas Turton of the Bureau of Immigration and Customs Enforcement was able to trace a computer screen name used by one of the Boyzilla group members to a telephone number in Jacksonville. The number was then traced to a house previously occupied by the defendant.
With this information, Agent Turton decided to go to the defendant's current residence to speak with him. He described the procedure the officers would use in their encounter with the defendant as a "knock and talk." In this kind of operation, the objective is to obtain a consensual interview. The officers have a contingent *798 plan to make an arrest if that becomes necessary, but they do not start out with the intention of arresting the suspect.
Agent Turton went to the defendant's apartment on April 3, 2002, along with another Customs agent and two detectives from the Jacksonville Sheriff's Office. All of the officers were in plain clothes. They did not have a search warrant or an arrest warrant, and they were not displaying their weapons. Turton knocked on the door and identified himself. He told the defendant that he was investigating a crime committed at the defendant's prior residence. He asked the defendant if he would speak with the officers, and the defendant replied, "Sure." He then asked the defendant if they could talk inside the apartment and, again, the defendant said, "Sure."
At the beginning of the interview, Agent Turton told the defendant that the officers were conducting a child pornography investigation. He explained that they had reason to believe the telephone line at the defendant's previous residence had been used to send or receive images of child pornography. He told the defendant that the Customs officers were not there to arrest him, and he urged the defendant to be truthful. Initially, the defendant denied that he had ever used the computer at his former residence to transmit pornography.
Later in the course of the interview, the officers asked the defendant if he had ever used the screen name "Gforce1080." When he acknowledged that he had used that name, the officers confronted him with a copy of an e-mail and a digital photo sent along with the e-mail as an attachment. The defendant examined these items and then admitted that he had transmitted child pornography over the internet on the computer in his former residence.
Following a Miranda warning, the defendant initialed the copy of the e-mail and photograph and gave the officers consent to examine his computer. He took the officers upstairs, where his computer was located, and showed them other images of child pornography. At that point, the detectives with the Jacksonville Sheriff's Office arrested the defendant and seized his computer.
The state charged the defendant with possession of child pornography, and the defendant moved to suppress all of the evidence obtained during his interview with the police. He claimed that he had asked the officers at the beginning of the interview whether he needed a lawyer and that their failure to give a good-faith answer to the question tainted all of the evidence they obtained from him. Additionally, he argued that his confession was involuntary because the officers deceived him with a false statement that he would not be arrested.
The trial court denied the defendant's motion. As for the first argument, the court found that the defendant was not in custody at the time of the interview. Because the defendant was not in custody, the trial court reasoned that the officers were not required to answer a question about the need for counsel. On the second point, the trial court found that there was no connection between the alleged misrepresentation and the defendant's subsequent confession. Based on this finding, the trial court concluded that the statement was not made as a result of any police deception.
Following the denial of the motion to suppress, the defendant entered a guilty plea to one count of possession of child pornography, reserving his right to appeal. The trial judge accepted the plea and placed the defendant on sexual offender probation for five years with a condition *799 that he serve one year in the Duval County Jail. The defendant then filed a timely appeal to this court to challenge the denial of his motion to suppress.
We begin with the applicable standard of review. An order denying a motion to suppress a confession is reviewed on appeal by a two-part standard. The findings of fact in the order are presumed to be correct and may not be rejected if they are supported by competent substantial evidence, but the legal conclusions the trial court has drawn from the facts are reviewed by the de novo standard. See Connor v. State, 803 So.2d 598 (Fla.2001); Loredo v. State, 836 So.2d 1103 (Fla. 2d DCA 2003).
There is no controversy about the facts relating to the defendant's claim that the officers failed to answer his question about the need for counsel. Although it is not clear whether the trial court accepted the defendant's testimony that he had, in fact, asked the officers whether he needed a lawyer, we assume that is the case. None of the officers could recall the question, but the order denying the motion does not turn on a factual dispute. The trial court assumed for the purpose of argument that the question had been asked, but held that it was not necessary, in any event, for the officers to give an answer.
This conclusion is supported by the supreme court's decision in Almeida v. State, 737 So.2d 520 (Fla.1999). There, the court held that if a suspect asks a question about his constitutional rights in the course of an interrogation, the police officers have a duty to give the suspect a good-faith answer to the question. However, the court qualified this requirement by stating that it applies only to custodial interrogations. As with the Miranda warning itself, the duty to answer a specific question arises only if the suspect is in custody or his freedom has otherwise been significantly restrained. Id.; see, e.g., State v. Seaton, 776 So.2d 997, 999 (Fla. 5th DCA 2001).
In determining whether a suspect is in custody, the court must consider all of the circumstances of the interrogation. Then the court must determine whether a reasonable person in the same circumstances would "have felt he or she was not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). As the Supreme Court explained, "Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve `the ultimate inquiry': `[was] there a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.'" Id. (brackets in original); see also Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).
By this standard, the trial court was correct in determining that the defendant was not in custody. The officers were in plain clothes and they were not displaying their weapons. They approached the defendant and asked him if he would speak with them. The defendant was not equivocal in his answer. He said, "Sure." When the defendant indicated that he would speak with the officers, they asked if they could enter his apartment. Again he answered unequivocally by saying, "Sure." During the course of the interview, the officers said nothing to lead the defendant to believe he was being detained or that his freedom of movement was restricted.
Although it is not dispositive, the location of the interview is a factor that strongly supports the trial court's conclusion that the defendant was not in custody. *800 An interview with a suspect in his own home is not ordinarily regarded as a custodial interrogation. See Duddles v. State, 845 So.2d 939 (Fla. 5th DCA 2003). A suspect who is questioned in his own home is not likely to have a sense that he is being detained, as might be the case if the suspect had been stopped on a highway or taken to an interrogation room at the police station.
The defendant also contends that his admission was induced by deception on the part of the officers. He claims that he spoke with them only because they told him he would not be arrested. We think there is much less to this argument than meets the eye. The record shows that the statement was not made with an intent to deceive the defendant, that it was not made to induce a confession, and, in any event, that it was not the cause of the defendant's eventual confession.
Agent Turton acknowledges that he told the defendant the Customs agents were not there to arrest him. That was true. As Agent Turton explained, Customs agents do not ordinarily make an arrest on the scene. In most cases, they gather information, which is then presented to a grand jury, and the arrest is made only after the suspect is indicted. The defendant may have taken Agent Turton's statement to mean that he would not be arrested by anyone, but even so, there was nothing in the statement that would have led him to believe he would not be prosecuted. Agent Turton did not suggest that the defendant would have a form of immunity if he agreed to speak with the officers.
A statement that a defendant will not be arrested might invalidate a subsequent confession, if the statement is made as a promise in return for the confession. See Walker v. State, 771 So.2d 573 (Fla. 1st DCA 2000); E.C. v. State, 841 So.2d 604 (Fla. 4th DCA 2003). In the present case, however, Agent Turton merely stated that he was not there to arrest the defendant. He did not say or even suggest that the defendant would not be arrested if he made a confession. There was no quid pro quo for the alleged promise.
Finally, the trial court determined that Agent Turton's representation did not cause the defendant to confess. The representation was made during the initial contact, and the circumstances changed considerably by the time the defendant confessed. When the officers confronted the defendant with the e-mail and photograph, he admitted that he had possessed child pornography. The trial court concluded that the confession was prompted by this display of the evidence, not by Agent Turton's earlier statement that he was not there to make an arrest. This finding is supported by the record.
In summary, we find no error in the denial of the defendant's motion to suppress. The officers were not required to answer a question about the need for counsel, because the defendant was not in custody at the time of the interview. Moreover, the record does not support the defendant's argument that the confession was induced by police deception.
Affirmed.
LEWIS, J., concurs.
ERVIN, J., dissents with opinion.
ERVIN, J., dissenting.
At the outset, I assume the majority would agree that in its legal sense an interrogation of appellant was conducted at his residence. An interrogation occurs if the officer should know that the questions asked were reasonably likely to elicit admissions of guilt from the suspect. Rhode Island v. Innis, 446 U.S. 291, 301, *801 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The facts displayed in the majority's opinion clearly demonstrate that such was the purpose of the interview. It appears our only disagreement is whether the interrogation was conducted in a custodial setting. As the Florida Supreme Court observed in Davis v. State, 698 So.2d 1182, 1188 (Fla.1997): "Miranda warnings are required whenever the State seeks to introduce against a defendant statements made by the defendant while in custody and under interrogation. Absent one or the other, Miranda warnings are not required." (Emphasis in original.)
I consider a more detailed exposition of the facts is essential to bring this case into proper perspective than that provided by the majority. It is important to know precisely what information Customs agents had obtained by the time they arrived for their "knock and talk" interview at appellant's apartment that he occupied with his fiancée and her two daughters. The agents then had in their possession an intercepted e-mail which included certain incriminating statements by the author, including his involvement with a pre-teenaged boy and the apparent dissemination of pornography. They had also recovered pornographic pictures posted on an Internet chat-room web site by a person who used the same sign-on name as that found on the e-mail. The only critical information the officers lacked was the identity of the person using the pseudonymous web name. Appellant became the target of the investigation because Customs had traced the captured e-mail to his former residence which he shared with his mother and stepfather. Of the three, presumably based on the officers' experience in ferreting out such matters, appellant, a 34-year-old single male, was the more likely suspect than the other occupants. Moreover, nothing in the record shows that any person other than appellant was ever questioned by the officers.
Although appellant was no doubt the officers' primary target of the investigation at the time of the interrogation, such fact by itself is not tantamount to a determination of whether the interview can be deemed custodial, thereby bringing into play the necessity of Miranda warnings. See Caso v. State, 524 So.2d 422, 423 (Fla. 1988). It is, nonetheless, part of the entire mix of facts relevant to a resolution of the issue. The ultimate test of custody for the purpose of compliance with Miranda is whether, under the totality of the circumstances, a reasonable person in the same position as the defendant would believe that his or her freedom of action was so curtailed that one would not feel free to leave or terminate the encounter. Duddles v. State, 845 So.2d 939, 941 (Fla. 5th DCA 2003). The resolution of this test depends upon an application of both law and facts. See Ramirez v. State, 739 So.2d 568, 574 (Fla.1999). As a guide for making such determination, the supreme court in Ramirez identified the following four general categories of circumstances pertinent to the inquiry:
(1) the manner in which police summon the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect is confronted with evidence of his or her guilt; (4) whether the suspect is informed that he or she is free to leave the place of questioning.
Id.
In applying these factors, courts determine the issue of custody, "not on the unarticulated plan of the police, but rather how a reasonable person in the suspect's position would have perceived the situation." Davis v. State, 698 So.2d 1182, 1188 (Fla.1997). Turning to the first of the four, the evidence supports the trial court's *802 order of denial for the reason that appellant invited the officers into his apartment, where he was questioned, and he was not arrested or taken to a jail facility or an officer's interview room before the questioning took place. Although reasonable persons might differ over whether appellant's acquiescence to four plain-clothes officers' request to enter his apartment, made to him at approximately 8:00 a.m., just after he had arisen from bed and while he was clad only in underwear, constituted an invitation, I conclude, as does the majority, that competent, substantial evidence supports this finding.
Our deference to the trial court in such regard does not, however, conclude our examination. Such circumstance does not by itself support a determination that the interrogation was not conducted in a custodial setting. For example, State v. C.F., 798 So.2d 751 (Fla. 4th DCA 2001), and Killian v. State, 761 So.2d 1210 (Fla. 2d DCA 2000), both involved situations where in-home confessions were suppressed because the defendants' freedom was significantly restrained. The court's order in the case at bar denying suppression erroneously focused primarily on the fact of invitation and generally ignored the remaining Ramirez factors. As stated, it is only after a review of all pertinent factors that a decision can be made whether the questioning occurred in a custodial environment.
In examining the second of the four factors, I think it obvious that the manner and purpose of the officers' inquiries was to ascertain whether appellant was the person who had illegally disseminated child pornography. Although the interview was primarily conducted inside appellant's apartment, it transpired over a three-hour period. The court ignored any separate analysis of this factor, reiterating, as it had earlier, that the defendant invited the officers into his apartment. In my judgment, the lower court misapplied the law to the facts by concluding such factor was controlled solely by the initial invitation, an act that is pertinent to a resolution of the first factor. See Duddles, supra. In my opinion, the court's discussion in State v. J.T.D., 851 So.2d 793 (Fla. 2d DCA 2003), is instructive as to a proper analysis of the Ramirez four-factor test. There the Second District separately addressed each of the four in reaching its decision that no custodial interrogation occurred.
As to the third factor, pertaining to the extent which the defendant is confronted with evidence of guilt, the record clearly shows such confrontation. After previously assuring appellant he would not be arrested by Customs, that they only wanted his cooperation in locating the producers of pornography,[1] the officers, well into the interview, showed appellant the intercepted e-mail containing the sign-on name, which appellant admitted was used by him. Having then established appellant's culpability, the officers proceeded with their questioning, still with no provision of warnings, asking appellant to be truthful in answering whether he was the one who had transmitted pornographic pictures from the former residence. Upon eliciting his affirmative response, the officers continued, inquiring about his acquaintance with a minor who appellant mentioned in the e-mail, and the reason why he had posted it. Only after all of these admissions did the interrogators finally administer to appellant the Miranda rights, which they reported he waived. I find it highly significant that the waiver occurred only after appellant had been apprised he would not be arrested by Customs. Appellant testified he was unconditionally assured by *803 the officers that he would not be arrested if he cooperated. Appellant's testimony was corroborated in part by Customs Agent Douglas Turton, the lead investigating officer, who candidly admitted that the assurance of non-arrest was made to relieve appellant's tension in order for him to be more likely to cooperate and confess.[2]
Given the totality of the circumstances involving the encounter, I cannot agree with the majority's characterization of the officer's assurance of non-arrest to mean "there was nothing in the statement that would have led [appellant] to believe he would not be prosecuted." Supra at 800. This may be the correct assessment of a person who is knowledgeable of his rights, which at the time of the officer's statement had not been conveyed to appellant. The correct evaluation instead should be directed to whether a reasonable person in appellant's position would have believed that in exchange for his cooperation no criminal sanctions of any sort would attach. As I have otherwise attempted to explain, appellant's impression of the officer's representations appears to be consistent with that of any reasonable person similarly situated.
Although the lower court, in addressing the applicability of the third factor, recited in its order the officers' display to defendant of evidence of guilt, the court nonetheless concluded that such factor was inapplicable. In so doing, the court relied on the law pertinent to consensual encounters, which states that "in the absence of any indicia of coercion or intimidating circumstances, police questioning about criminal conduct or activity alone, does not convert an otherwise consensual encounter into a custodial interrogation." Ramsey v. State, 731 So.2d 79, 81 (Fla. 3d DCA 1999).
What the lower court apparently overlooked in deciding that the encounter was consensual  a finding presumably based on appellant's invitation to enter  is that the interview between appellant and the investigating officers, occurring over a three-hour period, could hardly be described as consensual. Although such situations do not require the police to have a reasonable suspicion of any improper conduct by the person detained, they typically involve only a few questions, and are usually conducted on the street. See Voorhees v. State, 699 So.2d 602, 608 (Fla.1997). As a result of the court's erroneous finding, it never directly addressed the requirement imposed by the third factor, despite evidence clearly showing a confrontation with incriminating evidence.
The lower court's resolution of the fourth factor, relating to whether appellant was informed of his right to leave the place of questioning, was similarly flawed. Although the court acknowledged that appellant was never so advised, it nonetheless concluded that no custodial interrogation had occurred because the place of questioning was appellant's own home, into which he had invited the officers. Despite the officers' omission of any advice to appellant of his rights before their interrogation, the court, again based upon the fact of "invitation," decided that appellant could rescind the invitation at any time and ask the officers to leave. There is simply no support in the record for this finding. Appellant testified it was his perception he was not free to leave during the interview. Among other things, he stated that during the interrogation he and his fiancée were *804 not permitted to talk alonea statement the officers did not directly contradict. When the officers first entered the residence, they suggested that appellant might prefer to talk with them alone. Appellant then asked his fiancée to go upstairs. Subsequently, one of the detectives told appellant that he could be a "little more honest" with the officers if his fiancée was not listening to the discussion, and at that point, appellant and the officers stepped outside the apartment. Once outside, he admitted that he had posted pornography on the Internet and Miranda warnings were them read to him. At the officers' request, appellant signed a form waiver of his rights. When appellant and the officers went back inside the residence, one of the officers, believing appellant would be more "honest" in his answers if he and his fiancée were separated, remained downstairs with her while appellant and the remaining officers went upstairs to access requested material from a computer appellant used.
Appellant's understanding of the restrictions on his freedom of movement was also borne out by Agent Turton's testimony that at one point during the interview appellant asked if he could obtain a glass of water. As the court observed in Killian v. State, 761 So.2d 1210, 1214 (Fla. 2d DCA 2000), in regard to the defendant's request to acquire a beer during an interrogation conducted at his residence: "Permission to drink a beer in one's own home is not necessary unless there is some restraint on one's freedom."
The lower court's order determining that appellant's confession was not the product of a custodial interrogation fails the Ramirez four-factor test because it appears to be based exclusively on the finding of invitation. Without separately addressing the factors, the court, once it decided that the officers' initial entry was lawful, apparently concluded that the subsequent questioning necessarily took place in a non-custodial setting. In so doing, it ostensibly ignored evidence showing that the interrogation became increasingly coercive and intimidating over the course of its three-hour duration.
As a result of its evaluation, the court failed to take into consideration the extent to which appellant's unfettered choice between silence and speech, guaranteed by Miranda, may have been compromised by the officers' assurances that he would not be arrested by Customs, and that they were investigating only the producers of child pornography. In my judgment, the totality of the circumstances makes it sufficiently clear that a reasonable person in the same position as appellant would believe that his or her freedom of action was so curtailed by the officers' conduct that such person would neither feel free to leave nor terminate the questioning.
As to the issue of whether the officers were required to answer appellant's question regarding his need for counsel, I agree with the majority that at the time the inquiry was made, occurring at the outset of the encounter, no provision of warnings was necessary in that no custodial questioning had yet occurred. Because, however, the interrogation had clearly become custodial when appellant later made incriminating admissions, the officers should then have offered warnings before obtaining the statements.
The court also rejected appellant's argument that his confession was induced by promises he would not be arrested, holding it was only after he had been confronted with evidence of culpability that appellant made his initial admission of guilt; thus, in the court's view, the officers' statements could in no way be deemed to have influenced his confession. Again I cannot agree. The totality of the circumstances *805 reveals that appellant's admission came only after the officers had made an implied promise of non-prosecution, and thereafter continued their interrogation over a period of time without informing appellant that he could terminate the interview and request either the services of a lawyer or their departure. The order of denial overlooked this court's admonishments that a confession must not be induced by any type of promise, express or implied:
To exclude a confession or an inculpatory statement, it is not necessary that any direct promises or threats be made to the accused. It is sufficient if the circumstances or declarations of those present are calculated to delude the prisoner as to his true position and exert an improper influence over his mind. A confession or inculpatory statement is not freely and voluntarily given if it has been elicited by direct or implied promises, however slight. Where there is an express quid pro quo, i.e., a promise of protection from prosecution for cooperation, the promise of leniency alone is sufficient to render a confession or inculpatory statement involuntary.
Walker v. State, 771 So.2d 573, 575 (Fla. 1st DCA 2000) (emphasis added, citations omitted).
Finally, the lower court justified its suppression order on the ground that defendant's later admissions, obtained after he had been Mirandized, removed any possible taint connected with the earlier, unwarned statements. In so deciding, the court relied on Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). The facts in Elstad are altogether dissimilar from those at bar, however. There the police first questioned the defendant, who was eighteen and in his home in the presence of his parents, without administering Miranda warnings. Id. at 300-01, 105 S.Ct. 1285. The defendant responded with inculpatory statements. Id. The police then transported him to the station and fully advised him of his rights, whereupon he executed a written statement. Id. at 301-02. The Supreme Court concluded that the first statements were properly suppressed, but that it was not necessary to suppress the statements made after the Miranda waiver, which were knowing, intelligent and voluntary. Id. at 315-18.
It is important to understand that the Supreme Court prefaced its rule in Elstad with the following cautionary instruction: "[A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion [as to later statements for which warnings were properly given.]" Id. at 314, 105 S.Ct. 1285 (emphasis added).
The Florida Supreme Court declined to follow the Elstad rule in Ramirez on facts showing that the police had there used "trickery" to obtain a confession from Ramirez after learning from the co-defendant that Ramirez had robbed and murdered the victim. Without reading Ramirez his Miranda rights, the police confronted him at his home and informed him that they had knowledge of a conversation between him and the co-defendant. Ramirez, 739 So.2d at 572. After Ramirez turned over stolen items obtained during the crime and admitted his involvement, a detective informed Ramirez of his Miranda rights and received a subsequent admission. Id. The supreme court concluded, after a consideration of the pertinent circumstances, that the later confession was involuntarily obtained and should have been suppressed. Id. at 578. It particularly noted that in Ramirez, unlike Elstad, the interrogating officers had "exploit[ed] the suspect's unwarned admissions to secure the subsequent waiver of the rights." Id. at 576.
*806 Applying the same analysis the supreme court undertook in Ramirez, I similarly conclude that the confessions and other evidence secured therefrom were obtained by improper tactics, accomplished through statements of officers that were clearly designed to induce in appellant's mind the impression that in exchange for his cooperation, he would not be prosecuted. Under the circumstances, the taint affecting the initial, unwarned admission could not be cured by the later admissions, acquired after the provision of the Miranda warnings.
For all of the above reasons, I would reverse the conviction and remand the case with directions that appellant's confessions and the evidence resulting therefrom be suppressed.
NOTES
[1] Appellant's testimony in such regard was corroborated by Agent Turton.
[2] Agent Turton also admitted that if appellant had not been arrested by Jacksonville deputies, he intended to seek a federal indictment against him, and, if returned, would have thereafter arrested him. Agent Turton did not, however, convey his intention to appellant.