PALMER, J.
The State of Florida appeals the final order entered by the trial court granting Eduardo Figueroa’s (defendant) motion to suppress admissions he made while being questioned by law enforcement in his home.[1] Concluding that the defendant was not in custody at the time he made the admissions, we reverse.
The defendant was charged with multiple counts of sexual battery and lewd or lascivious molestation; the victims were his biological daughters. The defendant filed a pre-trial motion seeking suppression of admissions that he made while being questioned by law enforcement in his home.
At the suppression hearing, James Grayson, a child protective investigator with the Department of Children and Families, testified that, on the day in question, at approximately 6:45 in the morning, he was dispatched to meet Detective Coulter, of the Palm Bay Police Department, at the defendant’s home. He was asked to assist in the investigation of the defen *367 dant’s alleged crimes. Once they arrived at the defendant’s home, the defendant’s wife invited Grayson and Coulter to come inside and to sit at the dining room table. Grayson and Coulter then conducted interviews of the defendant’s wife and children, including the alleged victims. Grayson testified that “[t]he dining room had separate entryways to the kitchen and living room which did not have doors.”
After completing their interviews with the defendant’s wife and children, Grayson and Coulter asked the defendant’s wife if she would ask the defendant to come and speak with them. The defendant then voluntarily came out of his bedroom to meet them. As the interview with the defendant began, Officer Smith, a uniformed police officer, arrived at the home.
Smith testified that she stood in the doorway between the kitchen area and the dining room while Coulter and Grayson interviewed the defendant while seated at the dining room table. Smith also testified that, although a person wanting to leave the dining room area would have to walk past her, a person could freely leave the room without bumping into her. Smith testified that, during the interview, she stood a couple of feet away from the defendant.
Coulter testified next and he stated that he and Grayson went to the defendant’s home to conduct an investigation pursuant to allegations of abuse made by the defendant’s daughters. Coulter said that, after he finished questioning the family members, the defendant came out of his bedroom. Coulter asked the defendant if he and Grayson could talk to him, and the defendant directed them to sit at the dining room table. Coulter testified that the defendant could have left the dining room area at any time during his interview as his egress was not blocked and he was not in handcuffs or under arrest. Coulter did not tell the defendant that he was free to leave and he did not read the defendant his Miranda[2] rights. During the interview, the defendant made incriminating statements.
The defendant’s wife’s testimony corroborated much of Coulter’s and Grayson’s testimony. When asked about the manner in which Coulter and Grayson requested her to get the defendant from the bedroom, the defendant’s wife responded that the request was not aggressive or worded as a command.
Upon review of the evidence, the trial court granted the defendant’s suppression motion, ruling:
The Defendant was confronted in his own home by [Detective Coulter], a plainclothes officer with a badge and a gun, and by [the investigator]. They were later joined by [Officer Smith], an armed and uniformed PBPD officer, who stood within a few feet of the Defendant during his interview. The detective had the specific intent to question the Defendant regarding the allegations made by [his daughter] against the Defendant. There was no testimony by any witness that the Defendant was ever advised that he was free to leave the area, and it is undisputed that the Defendant was not read his Miranda rights. The Court finds in those circumstances a reasonable person in the Defendant’s position would not reasonably expect to be able to leave the area, to stop questioning, or to decline to continue the questioning.
[[Image here]]
Defendant’s statements were not the result of coercion or threat. The law enforcement officers did not raise their *368 voices or intimidate the Defendant. They did not offer promises upon which [the] Defendant could rely. They did not overcome his will by inappropriate appeals to his religion or sympathy.
The State contends that the trial court erred in granting the defendant’s suppression motion because the evidence does not establish that the defendant was in custody while being questioned inside his home. We agree.
“Because the trial court’s custody determination is a mixed question of law and fact, [appellate courts] defer to its findings of historical facts, as long as they are supported by substantial, competent evidence,” but review de novo the legal determination that the suspect was in custody. State v. Perez, 58 So.3d 309, 311 (Fla. 5th DCA 2011); see also Connor v. State, 803 So.2d 598 (Fla.2001); Snead v. State, 913 So.2d 724 (Fla. 5th DCA 2005); Duddles v. State, 845 So.2d 939 (Fla. 5th DCA 2003).
When addressing the issue of whether a suspect is in custody, courts must determine whether, under the totality of the circumstances, a reasonable person in the suspect’s position would feel a restraint of his or her freedom of movement in that one would not feel free to leave or terminate an encounter with the police. Duddles, 845 So.2d at 941. Four factors are considered in determining whether an interrogation is custodial: (1) the manner in which police summon the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect is confronted with evidence of his or her guilt; and (4)whether the suspect is informed that he or she is free to leave the place of questioning. Hewitt v. State, 920 So.2d 802, 804-05 (Fla. 5th DCA 2006) (citing to Ramirez v. State, 739 So.2d 568 (Fla.1999)). In making the evaluation, no single factor may “be considered in isolation”; rather, “[t]he whole context must be considered.” State v. Pitts, 936 So.2d 1111, 1124 (Fla. 2d DCA 2006).
Here, there are no issues regarding the manner in which the defendant was summoned for questioning. The trial court found that Coulter and Grayson did not coerce, threaten, raise their voices, or intimidate the defendant. Instead, the defendant willingly came out of his bedroom to speak with Coulter and Grayson and then motioned for Coulter and Grayson to sit at the dining room table with him.
The location of the interview — the defendant’s dining room — does not support the trial court’s conclusion that the defendant was in custody. An interview with a suspect in his own home is not ordinarily regarded as a custodial interrogation. See, e.g., Evans v. State, 911 So.2d 796 (Fla. 1st DCA 2005); Duddles, 845 So.2d at 941. “A suspect who is questioned in his own home is not likely to have a sense that he is being detained, as might be the case if the suspect had been stopped on a highway or taken to an interrogation room at the police station.” Evans, 911 So.2d at 800. The record reflects that the show of authority at the defendant’s home was not overwhelming, and it supports the trial court’s conclusion that law enforcement did not coerce or intimidate the defendant into complying with their request for an interview.
Next, although the defendant was confronted with the allegations of his sexual abuse, the defendant was not confronted with evidence so indicative of guilt that a suspect in the defendant’s position would feel that he was going to be arrested. Coulter only had the initial allegations against the defendant made by his daughters. Confronting a suspect with only *369 some evidence of guilt does not turn a consensual encounter into a custodial interrogation. See Schoenwetter v. State, 931 So.2d 857, 867 (Fla.2006) (holding that confronting a suspect with some evidence of guilt does not necessarily mean that the defendant was in custody). We have held that “questioning [a defendant] about criminal conduct or activity alone” or confronting a defendant “with evidence strongly inferring [a defendant’s] guilt” does not establish that a custodial interrogation was conducted. See State v. Scott, 786 So.2d 606, 610-11 (Fla. 5th DCA 2001); see generally Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (holding that asking potentially incriminating questions does not convert a consensual encounter into a seizure); State v. Poole, 730 So.2d 340, 342 (Fla. 3d DCA 1999) (holding that “in the absence of any indicia of coercion or intimidating circumstances, police questioning about criminal conduct or activity alone, does not convert an otherwise consensual encounter into a unlawful seizure or detention”).
Lastly, although the trial court found that the defendant was not advised by law enforcement that he was free to leave, the absence of such advice does not transform a consensual encounter into a custodial interrogation. See Scott, 786 So.2d at 610 (“Although [the police] did not inform [the defendant] that she was free to leave, there was nothing to suggest that her freedom of movement was curtailed in any manner.... [Police] questioning about criminal conduct or activity alone, does not convert an otherwise consensual encounter into a custodial interrogation.”). The record reflects that the defendant was not placed in handcuffs, nor was he ordered to sit at the dining room table. Rather, the defendant invited Coulter and Grayson to sit at the dining room table with him.
Considering the totality of the circumstances, we conclude that the trial court erred in concluding that the defendant was in custody at the time of his interview. Accordingly, the trial court’s suppression order is reversed.
REVERSED and REMANDED.
ORFINGER and LAWSON, JJ„ concur.

. Jurisdiction is proper pursuant to rule 9.030(b)(1)(A) of the Florida Rules of Appellate Procedure.

. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).