PALMER, J.
The State of Florida appeals the order entered by the trial court granting the motion to suppress filed by the defendant, *1229 Sharon Myers.[1] Determining that the defendant was not in custody at the time she made the statements which are the subject of the court’s suppression order, we reverse.
The defendant was indicted on one count of first-degree murder and one count of armed burglary of a dwelling. The murder victim was the defendant’s husband, and the persons who allegedly committed the murder were the defendant’s son and one of the son’s friends. The defendant was charged as being a principal to the murder.
The defendant filed a motion to suppress statements she made to law enforcement during two station-house interviews.. The first interview took place in the early morning of the day after the murder and the second interview occurred a day or two after the first interview. The motion alleged that suppression of the defendant’s statements was warranted because the defendant was in custody at the time the statements were made, but she had not been issued her Miranda[2] warnings prior to being interviewed.
The matter proceeded to a hearing. The only evidence presented during the hearing was the testimony of one of the officers who interviewed the defendant and several hours of videos depicting the two interviews. The trial court ultimately granted the defendant’s suppression motion, concluding that the totality of the circumstances established that the defendant had been subjected to custodial interrogation during her two police interviews.
“A trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.” Jackson v. State, 18 So.3d 1016, 1027 (Fla.2009) (citations omitted) (internal quotation marks omitted). The appellate court will accept the trial court’s factual findings if they are supported by competent substantial evidence. State v. Triplett, 82 So.3d 860, 863 (Fla. 4th DCA 2011). However, the trial court’s application of the law to the historical facts is reviewed de novo. Id.
Gaines v. State, 155 So.3d 1264, 1268 (Fla. 4th DCA 2015). As such, appellate courts review the legal determination that a suspect was in custody de novo. State v. Figueroa, 139 So.3d 365, 368 (Fla. 5th DCA 2014). “[T]o the extent that the trial court’s findings are based on viewing [an] interrogation DVD, which th[e appellate] court ... has also viewed, [the appellate courts] utilize a much less deferential standard.” Black v. State, 59 So.3d 340, 344 (Fla. 4th DCA 2011). See also Dooley v. State, 743 So.2d 65, 68 (Fla. 4th DCA 1999) (explaining that when interrogations are recorded, the appellate court is permitted to review the recordings to ascertain the legal sufficiency of the trial court’s ruling).
Review of the defendant’s interrogation interviews, as well as the testimony submitted during the suppression hearing, establishes that, with regard to the defendant’s initial interview, an officer went to where the defendant was staying in the early hours of the morning following the murder and told her that he needed to interview her at the station, and she volunteered to go to the station with him. He drove the defendant to the station in an unmarked patrol car; she sat in the front *1230 passenger seat of the car and she was not handcuffed. The officer told the defendant, before taking her to the station, that she was not under arrest and that she was free to leave at any point.
The video of the interrogation demonstrated that the door to the interview room was not locked, but it was closed for privacy. The interview was one hour and fifty-two minutes long, and it was undertaken around midnight, about nine hours after the murder. The interview was accusatory at times and involved several different interviewers. At one point, one interviewer told the defendant to “stay right here,” and he then exited the room. The defendant remained sitting in her chair. After the interview, an officer drove the defendant back to where she was staying.
The next day, law enforcement discovered hundreds of letters which were written by the defendant to her son (the alleged murderer) prior to the murder, while he was in prison on unrelated charges. The content of the letters suggested that the defendant was involved in planning the murder; therefore, the officer contacted the defendant again and requested that she come back to the station to answer some more questions. She agreed. He then picked the defendant up from her home in his unmarked patrol car and took her to the station. She again rode in the front seat of the car with no restraints.
The second interview was two hours and forty minutes long. One deputy advised the defendant at the beginning of the interview that he appreciated her coming to talk to them and that she was not under arrest for anything. The other deputy told her that the door was shut for privacy and she was free to leave at any time. The interview was more accusatory in nature than the first interview and included questioning about the incriminating letters.
At the end of the second interview, the initial interviewer asked the defendant if she remembered that he had told her, when she first came in, that she was not under arrest and she responded “uh huh”. He told her that she was free to leave and that she had been free to leave the whole time. He stated that he was going to release her so she could go home if she wanted to. One of the officers then drove the defendant home. The defendant was not arrested until three years later.
The trial court granted the defendant’s suppression motion, ruling: “[Biased upon the totality of the circumstances, the Court finds the Defendant was in custody at the time of her interrogations and because she was not advised of her Miranda rights, her statements to law enforcement must be suppressed.”
The State argues that the trial court reversibly erred in granting the defendant’s suppression motion because the evidence submitted during the suppression hearing established that the defendant was not in custody at the time, she was interviewed by the officers. We agree.
In order for a court to determine that a suspect is in custody, it must be evident under the totality of the circumstances that a reasonable person in the suspect’s position would feel a restraint on his or her freedom of movement. In other words, a reasonable person in the position of the person being interviewed would not feel free to leave or to terminate an encounter with the police. See Bedoya v. State, 779 So.2d 574 (Fla. 5th DCA), review denied, 797 So.2d 584 (Fla.2001). A trial court should consider four factors in determining whether an interrogation is custodial: (1) the manner in which police summon the suspect for questioning; (2) the purpose,'place, and manner of the interrogation; (3) the *1231 extent to which the suspect is confronted with evidence of his or her guilt; and (4) whether the suspect is informed that he or she is free to leave the place of questioning. See [Ramirez v. State, 739 So.2d at 573 (Fla.1999)]. Thus, the court must use an objective test to determine whether an individual is in custody. The proper inquiry is hot the unarticu-lated plan of the law enforcement officers, but rather how a reasonable person in the suspect’s position would have perceived the situation.
Snead v. State, 913 So.2d 724, 727 (Fla. 5th DCA 2005).
The evidence below established that, as for both interviews, an officer asked the defendant to come down to the station to answer some questions and, once she agreed, the officer drove the defendant to the station in an unmarked police car. During the ride, the defendant sat in the front seat of the car without any restraint. She was advised before each interview that she was free to go at any time. After the interviews were completed, an officer drove the defendant home. Thus, as for prongs one and four, the manner in which law enforcement summoned the defendant for questioning did not suggest that she was in custody, and the defendant was told, prior to both interviews, that she was not under arrest and she was free to leave at any time.[3]
As for prongs two and three, although one purpose of the interview was to get the defendant to tell the officers her motive for participating in her husband’s murder, and the officers spent most of the time during both interviews confronting the defendant with evidence they said they had against her, under the totality of the circumstances, a reasonable person in the defendant’s position would have felt free to terminate the interviews.
Accordingly, we reverse the trial court’s suppression order and remand for further proceedings. See Hunter v. State, 8 So.3d 1052, 1062 (Fla.2008) (holding that the defendant was not in custody where he was voluntarily driven to station by police, he was confronted with some evidence about another suspect, he was not handcuffed, and he was reminded several times that he could go home and officers would take him); Fitzpatrick v. State, 900 So.2d 495, 510 (Fla.2005) (holding that defendant was not in custody when he made statements during his initial interview with detective since defendant voluntarily complied with a detective’s request for an interview; defendant drove to police station where he was interviewed for approximately forty-five minutes to an hour; defendant was specifically informed that he was not under arrest; and when defendant stated he might need to talk to a lawyer, detective responded that such was defendant’s choice); Roman v. State, 475 So.2d 1228, 1232 (Fla.1985) (holding that station house interrogation of defendant did not constitute custody where defendant voluntarily accompanied officers to station house, he was not handcuffed, and he failed to demonstrate any basis for a reasonable belief that there was a restraint on his freedom of movement of the degree associated with a formal arrest); State v. Scott, 786 So.2d 606, 610 (Fla. 5th DCA 2001) (reversing order finding that the defendant was in custody during questioning where detective dressed in plain clothes and interviewed defendant in reception office; defendant was confronted with evidence of guilt and told she was one of three suspects but tone was conversational, and *1232 there was no indication of coercion, threats, or intimidation); State v. Rodriguez, 785 So.2d 759, 761 (Fla. 3d DCA 2001) (holding that defendant was not in custody where he arrived and left station on his own volition, interview room was not locked, there was no indicia of coercion or intimidating circumstances, and defendant was told he was free to leave at any time); Bedoya v. State, 779 So.2d 574, 579 (Fla. 5th DCA 2001) (holding that defendant was not in custody where, despite the fact that detective had evidence against the defendant and was likely to arrest, defendant voluntarily presented himself for questioning and was told he was free to leave and was not in custody).
REVERSED and REMANDED.
BERGER, J., concurs.
COHEN, J., dissents with opinion.

. Jurisdiction is proper under rule 9.140(c)(1)(B) of the Florida Rules of Appellate Procedure.

. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Notably, the defendant has not cited to any case where a defendant was found to be in custody where the defendant was told, prior to being interviewed, that he/she was free to leave at any time.