730 So.2d 360 (1999)
Jack KILLIAN, Appellant,
v.
STATE of Florida, Appellee.
No. 98-01162.
District Court of Appeal of Florida, Second District.
March 24, 1999.
Rehearing Denied April 22, 1999.
*361 Elliott C. Metcalfe, Jr., Public Defender, and Peter B. Belmont, Assistant Public Defender, Bradenton, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Patricia E. Davenport, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Jack Killian appeals his convictions and sentences for two counts of capital sexual battery,[1] one count of handling and fondling a child,[2] and one count of use of a child in a sexual performance.[3] We reverse because the State introduced five "dirty" books possessed by Mr. Killian that were unconnected to the alleged offenses.
Mr. Killian is the uncle of the alleged victim, a nine-year-old girl. She testified that when she was alone with him at his home, he took two self-developing photographs of her in the nude and placed them in a drawer in his garage next to a "nasty" magazine that pictured two naked men and a naked woman on the cover. She also claimed that on several occasions he touched her genital area on the outside of her clothing. Finally, she testified that he kissed her vagina while they were in his swimming pool and that he forced her to place her mouth on his penis. There were no witnesses to these events. The State presented no physical evidence of any sexual contact. Thus, the State's case relied primarily upon the credibility of a young witness whose testimony was not entirely consistent.
When the child first reported this incident several months after the events, the State obtained a search warrant and searched Mr. Killian's home. The officers did not find the nude photographs or the magazine. They did find two cameras that could have been used to take the photographs. In an undisclosed location, the officers found five paperback books. The books are entitled: Teens for Older Men, Satisfaction Through Incest, Making Great-Grand-Daughters, As Young As They Cum, and Incest Is Best. Although the books' covers have drawings or photographs depicting sexual activity, none of the pictures is similar to the magazine cover described by the victim. These books were inexpensively published and apparently contain no photographs. These books are not directly related in any fashion to the nude photographs nor are they directly involved in any of the alleged activities with Mr. Killian's young niece. Although they certainly are not quality literature, these books are not *362 illegal pornography and their possession is protected by the First Amendment.
When the State indicated its intention to introduce these books into evidence, Mr. Killian's attorneys filed a motion in limine to exclude the books. The trial court denied the motion because it concluded that the titles were somehow relevant to prove the alleged conduct between the older man and his niece. At trial the books were identified by a detective who was the State's first witness. He testified that the books were found somewhere in the residence during the search, which occurred several months after the alleged incidents. He did not know the exact location of the books. Over objection, the court later introduced the books into evidence. The court, however, taped the books closed so that the jury was allowed to judge the books only by their covers.[4]
In his initial closing argument, over objection, the prosecutor stated:
What about the books? Why are those books so important in this case, ladies and gentlemen? Well, for two reasons these books are important. Very first, most important reason I submit to you that those books are very important is because it tells you a lot about Mr. Killian, it tells you about his mind. [Objection made and overruled at this point.]
. . . .
Think about it for just a moment. The odds are absolutely astronomical that the person that she would accuse, if it was false, that the person she would accuse would have books, not one book, not two books, not three books [objection made and overruled at this point], not four books, that's five books, ladies and gentlemen. What do they deal with? Sex with children. Sex, incestuous relationships, sex with relatives, sex with family members. You're going to get to take those books back with you, look at them. Look at the titles. Ladies and gentlemen, it shows you his mind and it shows you that the things [the victim] says [objection made and overruled at this point] are corroborated; very, very important.
At the close of the State's rebuttal, the prosecutor argued:
If the kid says these things happened, then they must have happened. Judge him by [the child's] statements. Judge his intent by the books, As Young As They Cum. [Objection made and overruled at this point]. As Young As They Cum. I won't go through them all, they'll be available for you to look at, you've heard it and you'll see them again. Judge it by a man who preyed upon a nine-year-old girl.
The arguments concerning the admissibility of these books and the closing arguments indicate that the State introduced these books to prove character. Evidence of a person's character or a trait of character is generally inadmissible to prove action in conformity with it on a particular occasion. See § 90.404(1), Fla. Stat. (1997).
None of the exceptions to the general rule of inadmissability of character evidence applies in this case. The State is not trying to rebut character evidence offered by the accused. See § 90.404(1)(a), Fla. Stat. (1997). Nor is the fact that Mr. Killian possessed these books proper Williams rule[5] evidence. See § 90.404(2). The act of lawful possession of dirty books is not sufficiently similar to capital sexual battery to permit this evidence. See Heuring v. State, 513 So.2d 122 (Fla. 1987).
The State used the books to show Mr. Killian's state of mind and intent. This was improper because state of mind is not a material fact in a sexual battery case and intent is not an issue. See Coler v. State, 418 So.2d 238 (Fla. 1982); Jackson v. State, 640 So.2d 1173 (Fla. 2d DCA 1994). Likewise, lewd assault is not a specific intent crime. *363 See Harris v. State, 418 So.2d 416 (Fla. 1st DCA 1982). Although the defendant's state of mind may play some modest role in such a case, neither the State nor the defense is allowed to make state of mind a feature of the trial.
The trial court committed prejudicial error when it introduced these books into evidence, and the State compounded that error in closing argument. We must order a new trial.
Reversed and remanded.
THREADGILL, A.C.J., and SALCINES, J., Concur.
NOTES
[1] See § 794.011(2), Fla. Stat. (1997).
[2] See § 800.04(1), Fla. Stat. (1997).
[3] See § 827.071(2), Fla. Stat. (1997).
[4] Although we doubt that the titles alone could ever make such books sufficiently relevant to allow their admission as probative evidence in this context, we note that the illustrations on the books with "incest" in their titles are suggestive of brother/ sister relationships. The remaining books have illustrations suggesting sexual activity with teenage girls. None of the books, at least by their covers, suggests sexual activity between an uncle and a pre-teenage child.
[5] See Williams v. State, 110 So.2d 654 (Fla. 1959).