CASANUEVA, Judge.
Richard M. Hebei appeals his conviction for sexual battery of his then spouse, P.H.C., contending that the trial court allowed the introduction of irrelevant, prejudicial evidence and precluded permissible cross-examination of the complainant. We agree that the court committed reversible error and remand for a new trial.

I. INTRODUCTION

The events of May 16,1998, are disputed by the parties. P.H.C. testified that, after failing to rape her, Mr. Hebei struck her with a flashlight and then forced the flashlight into her vagina. Mr. Hebei denounced the allegations as “absolutely false” and contended that P.H.C. invented the charges because she feared that he might be awarded custody of their children. The Hebels, who had separated after seventeen years of marriage and were the parents of two teenage girls, were contemplating a divorce at the time of these events. They had agreed on a property distribution scheme but could not come to terms regarding the custody of their daughters.
On May 16, 1998, P.H.C. invited Mr. Hebei to the marital home to complete some outside yard chores. Because they were behaving amicably, the wife asked Mr. Hebei to make a repair inside the home. She testified that he became enraged when he spotted a brochure entitled, “What to do before you get pregnant.” Angrily, he asked her the identity of her new sexual partner. P.H.C. denied that there was anyone and asserted that the insurance company had sent the brochure unsolicited. Her response failed to ameliorate Mr. Hebei’s anger; he dragged her by the hair to a nearby bedroom, where he forcibly attempted to have sexual relations with her. She testified that during her resistance he ejaculated on her thigh. Then he began striking her with a flashlight and later “used it on me.” After striking her, she testified, “he shovéd the flashlight up my vagina.”
After Mr. Hebei left, P.H.C. telephoned her physician, Dr. Jeffrey Lyons. Upon learning that she had been raped, Dr. Lyons tried but failed to persuade P.H.C. either to seek medical attention or to report the incident to the police. He then telephoned an off-duty sheriffs deputy who dispatched officers to her home. P.H.C. refused to provide a detailed statement to the police regarding the incident, but finally she consented to be examined by Dr. Lyons.
During her medical examination, P.H.C. offered no details about her claim of sexual battery except to state that her husband had used a blunt instrument to harm her. Dr. Lyons observed bruises, abrasions, and scratches on her face and thighs which were consistent with fresh trauma. His examination found her external genitalia essentially normal. Because P.H.C. claimed that a blunt object such as a flashlight was used, Dr. Lyons expected to find bleeding or lacerations but found neither. An attending nurse, present at the examination, testified that P.H.C. had huge bruises on her thighs and that her lips were both “busted” and swollen. She also noted that the complainant was shaking all over and appeared to be frightened. P.H.C. declined an internal vaginal examination due to pain.
A week later, P.H.C. brought the flashlight to law enforcement and identified it as the weapon Mr. Hebei used on her. She also made a statement identifying Mr. Hebei as the perpetrator of the sexual battery. During the intervening week, however, she had destroyed other potential evidence such as the bed and box springs *145 upon which the alleged rape took place. Additional forensic tests requested by the State failed to corroborate P.H.C.’s sexual battery claim. Thus, with this conflicting evidence before it, the jury was to decide whose version of events to believe.

II. EVIDENTIARY ERRORS

Prior to trial the State filed its intention to use Williams rule[1] similar fact evidence, seeking to introduce the complainant’s testimony that, approximately one month before the alleged crime, Mr. Hebei had slapped P.H.C. in the face with the back of his hand. According to P.H.C., the incident had been prompted two days before the actual battery when she presented Mr. Hebei with divorce papers drafted by a lawyer who was a member of Mr. He-bei’s Rotary Club. Because the lawyer was a fellow Rotarían, Mr. Hebei was embarrassed and angry. Over defense objection,' the statement was admitted at trial together with supporting evidence from three witnesses, each of whom had observed P.H.C.’s bruise and had been told that she had been slapped by Mr. Hebei.
Also prior to trial, the defense sought a ruling on the introduction of evidence regarding P.H.C.’s first marriage, particularly that P.H.C. had not been awarded custody of the child born of that marriage. In violation of a court order, P.H.C. had traveled to another state, had taken the child from the custodial parent, and had brought the child to Florida. Because child custody between the Hebels had not been resolved, the defense contended that this prior act established a motive for her to fabricate this story. The trial court, however, refused to permit defense inquiry intQ either her former marriage or the taking of her child from the father.
Finally, the defense learned during discovery that P.H.C. had been examined by Dr. Patty Alessi and sought to examine her medical records. Without articulating a basis, the trial court refused to permit the examination of the medical records. At trial, P.H.C. testified that she bled vaginally for one or two weeks following the incident. The defense contended that the records might have contained impeachment evidence on the vaginal bleeding testimony.

III. ANALYSIS

The first issue is whether testimony regarding the April 17, 1998, incident was properly admitted pursuant to section 90.404(2)(a), Florida Statutes (1997). We conclude that it was error to admit this testimony. Section 90.404(2)(a) permits the introduction of similar fact evidence of other crimes, wrongs, or acts when it is relevant to prove a material fact in issue. Thus, the proffered Williams rule evidence in this case must have been probative of the sexual battery charge against Mr. Hebei. The alleged slap is not strikingly similar to the alleged assault with a flashlight, nor do the two incidents share any unique characteristics. See Heuring v. State, 513 So.2d 122 (Fla.1987). The first incident was an isolated act that occurred in public; the second consisted of escalating events in a private home culminating in a sexual attack with an object. Although both acts are reprehensible, they lack the similarity requirements of section 90.404(2)(a).
As an alternative, on appeal the State has argued that admission of the prior slap incident, although perhaps not permissible as “similar” fact evidence under the Williams rule, was nevertheless admissible because it was relevant evidence, “tending to prove or disprove a material fact,” § 90.401, specifically, Mr. Hebei’s state of mind or the identity of the perpetrator. See Jorgenson v. State, 714 So.2d 423 (Fla.1998); Sexton v. State, 697 So.2d 833 (Fla.1997). Neither of these arguments is persuasive, however, because the perpetrator’s state of mind is not an issue in a sexual battery case, see Killian *146 v. State, 730 So.2d 360, 362 (Fla. 2d DCA 1999), and identity was not at issue in this case. Rather than mistaken identity or alibi, the proffered defense was that the complainant’s testimony was a work of fiction, that no one assaulted P.H.C. with a flashlight. Therefore, the evidence was not admissible under either of these theories.
As an extension of its “dissimilar” fact evidence theory, the State has relied upon Zack v. State, 753 So.2d 9 (Fla.2000), for the proposition that this evidence was appropriate to demonstrate the context in which the ultimate crime occurred. In Zack the use of the prior crime evidence was upheld because those events were “part of a prolonged criminal episode demonstrating” the context of the victim’s murder. Because Zack’s actions were calculated, not the result of happenstance, and were practically continuous, they were relevant to prove motive, intent, and mo-dus operandi. 753 So.2d at 16. In contrast, no pattern of continuous events existed in this case. The slap and the sexual battery were separated by almost one month, and no prolonged conduct linked the two incidents. Therefore, Zack does not apply and cannot sanction the evidence’s admission.
As stated in Bryan v. State, 533 So.2d 744, 746 (Fla.1988), evidence of other wrongful acts is not limited to similar fact evidence, but the evidence must be relevant to a material fact in issue. We have carefully reviewed the record to ascertain whether the slap evidence was relevant to prove a material fact and have concluded that its sole purpose was to show propensity to commit an act, which is prohibited under section 90.404(2)(a). See Foburg v. State, 744 So.2d 1175 (Fla. 2d DCA 1999). The only thing the State hoped to prove by showing that Mr. Hebei had once slapped his wife was that Mr. Hebei tended to lash out violently when angered.
The error in admitting P.H.C.’s statement concerning Mr. Hebei’s prior bad act was compounded when the trial court admitted the testimony of three witnesses who were told by P.H.C. that her husband struck her. The trial court found their statements were governed by section 90.801(2)(b), which authorizes the admission of prior consistent hearsay statements to rebut a theory of recent fabrication. We hold that section 90.801(2)(b) is not applicable in this context.
The alleged battery predated the charged crime, as did P.H.C.’s statements concerning that incident. The defense theory in this sexual battery case was that P.H.C. had fabricated the charges from the outset, not that she had “recently” fabricated them, as would have been apparent had she made different statements previously. To be admissible under section 90.801(2)(b), an otherwise inadmissible prior hearsay statement must be consistent with the statement being examined at trial and must rebut a charge that the witness recently fabricated that statement (i.e., that Mr. Hebei sexually assaulted P.H.C. with a flashlight on May 16, 1998). Testimony concerning what P.H.C. had told others concerning a prior incident (i.e., that Mr. Hebei slapped her across the face on April 17, 1998) did not come within the purview of section 90.801(2)(b) because the prior statements were not in any way consistent with her statements concerning the sexual battery. See Bertram v. State, 637 So.2d 258 (Fla. 2d DCA 1994). An appropriate analysis under this evidentiary rule is confined to statements made concerning the pending criminal charge. See Szuba v. State, 749 So.2d 551 (Fla. 2d DCA 2000); Keffer v. State, 687 So.2d 256 (Fla. 2d DCA 1996).
We recognize that the State might have intended to introduce the prior hearsay statements concerning the slap to rebut the charge that P.H.C. had recently fabricated the entire slap incident in order to make Mr. Hebei’s violent disposition apparent to the jury. If that is the focus of the argument, we reject it. As we have already discussed, P.H.C.’s trial statement *147 about the slap should not have been admitted. Any admission of hearsay to bolster her credibility as to that incident, under the guise of rebutting a charge of recent fabrication, was entirely improper.
We now address whether the trial court erred in prohibiting the defense from cross-examining P.H.C. regarding her first marriage and her alleged violation of the child custody order. As to the first contention, on the record before us we discern no error. As to the second, cross-examination is permitted to show a witness’s motive to falsify testimony. The fact that the complainant violated a child custody order and removed the child not only from the custodial parent but also from the child’s state of residence is plausibly related to a motive to lie in this instance where the custody of the children had not been determined at the time of the alleged offense. On remand, the facts surrounding this assertion may be fully developed so that the trial court may determine whether cross-examination should be permitted.
The final issue is whether the trial court should have allowed discovery of Dr. Alessi’s records. We can discern no reason why the defense should have been precluded from obtaining these records, which might very well have provided relevant information concerning P.H.C.’s condition in the time immediately after the trauma.

TV. CONCLUSION

The outcome of this case clearly depended on the jury’s credibility findings, and all of the issues raised in this appeal concern that essential determination. Because the admission of the prior bad act evidence prejudiced Mr. Hebei’s right to a fair trial, we must reverse and remand for a new trial.
ALTENBERND, A.C.J., and GREEN, J., Concur.

. Williams v. State, 110 So.2d 654 (Fla.1959).