761 So.2d 1210 (2000)
Jack KILLIAN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D99-2991.
District Court of Appeal of Florida, Second District.
June 28, 2000.
*1211 James Marion Moorman, Public Defender, and J.L. "Ray" LeGrande, Special Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Jenny S. Sieg, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
Jack Killian appeals his judgments and sentences for two counts of capital sexual battery, one count of handling and fondling a child, and one count of use of a child in a sexual performance.[1] We agree with Killian that the trial court erred in denying his motion to suppress, and we reverse.
Killian contends that the trial court erred in denying his motion to suppress statements because those statements were made during a custodial interrogation conducted without informing him of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Killian made incriminating statements during a conversation with one of five law enforcement officers executing a search warrant at his residence. The conversation and the circumstances leading up to it are revealed in the suppression hearing testimony of Killian and two of the officers.
Detective Daniel Curry testified that he, two other detectives, and a crime scene technician went to Killian's residence to execute a search warrant of that residence. The detectives arrived in two unmarked vehicles, and they were dressed in plain *1212 clothes with badges clipped to their belts. Detective Curry had a gun on his hip but the record does not reflect if the other detectives also had guns. The crime scene technician was in his uniform in a marked crime scene unit sheriffs van without overhead lights. He was joined by a technician in training about thirty minutes later. The officers parked their vehicles on the street in front of Killian's house. Killian was in his garage when the officers arrived, and he stepped outside as Detectives Curry and Starling walked up to the garage. Detective Curry advised Killian of the officers' identities and read the search warrant. He did not at that time describe the allegations in great detail. Detective Curry asked Killian if he would mind waiting outside the garage for officer safety[2] and to prevent contamination or destruction of evidence. Killian complied by waiting under a tree just off the driveway. Detective Curry kept an eye on Killian for officer safety. Sometime after the search began, Killian approached Detective Curry and asked about the allegations. Detective Curry said that there had been allegations of inappropriate touching, and Killian denied any type of inappropriate contact. Killian then indicated that he wanted to go to the bathroom and get something to drink and asked Detective Curry to go inside the house. They proceeded to the kitchen, and Detective Curry sat down while Killian went to the bathroom. When Killian returned, he got a beer from the refrigerator and sat down with Detective Curry. The two conversed for about thirty to forty minutes, during which time Detective Curry never advised Killian of his Miranda rights. During this conversation, Killian initially denied the allegations, then he minimized them, and finally he stated that if the child said it happened, it must have happened. No one else was present during the conversation.
On cross-examination, Detective Curry was asked if he told Killian to stand under the tree. He responded, "I'm not so sure if I specifically indicated to stand near the tree, as much as I did just outside, you know, stand outside the immediate area where we're working, where we're searching." Detective Curry was also asked whether he sent an officer to keep an eye on Killian when he had to go inside the garage to speak to the other officers. He responded, "Not specifically, just I believe on the one or two occasions where I did go in, I had asked Detective Dummer just to, you know, once in a while take a look outside and just see what Mr. Killian was doing." Defense counsel asked Detective Curry if he would agree that when he went inside, an officer came outside and Curry answered, "[a]t least to the point where Mr. Killian could be observed, yes. And again, as I indicated, that was strictly for officer safety purposes. ... There were a couple of times, absolutely, where he was out there alone. ... But ... for the most part there was someone there, but there were instances where he was alone." Detective Curry also testified on cross-examination that it was he who raised the possibility that the touching of the child victim had been accidental. He admitted that his objective in conversing with Killian was to try and get admissions from him.
Killian testified at the suppression hearing that Detective Curry told him to stand under the tree. At one point while he was under the tree, he moved a couple of steps and another detective told him to get back to the exact spot he had been in. While Killian was standing under the tree, he was never left alone. At some point, Detective Curry said, "Come on in, we'll talk about this." Killian said that was good because he needed to go to the bathroom. Killian testified that Detective Curry "let" him go to the bathroom and that another detective followed him part of the way to *1213 see where he was going. This other detective had been standing with Killian under the tree and followed him and Detective Curry inside the house. When Killian returned to the kitchen, he asked Detective Curry if he could have another beer.[3] He then sat down and the two conversed for a "couple of hours." During the majority of the conversation, the other detective remained standing nearby. Detective Curry never advised Killian that he was free to terminate the conversation at any time or that he was free to get up and leave.
Detective Eddie Starling testified that he participated in the search and was never outside with Killian. He stated that Killian asked Detective Curry for an in-depth explanation of what was transpiring and the two went inside to discuss that information. Detective Starling estimated that Detective Curry spoke with Killian for approximately an hour to an hour and a half. He testified that no one else was inside the house during the conversation.
In denying Killian's motion to suppress, the trial court ruled that Killian was not in custody because the court did not think that a reasonable person in Killian's position would have believed he was under formal arrest or that his freedom to move had been restrained in a similar manner. The court based this ruling on its acceptance of the officer's testimony that Killian was asked to wait outside simply for officer protection and search efficiency. The court also found that there was no intimidation or coercion of Killian as he was not handcuffed, he invited the officer into his house, and the interview occurred in the house in a hospitable environment in which Killian was permitted to drink.
We first address the issue of whether Killian was interrogated. "[T]he term `interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Not only did Detective Curry testify that his objective in questioning Killian was to obtain admissions from him, he testified that he did not take notes or record the conversation because he did not want to take the time to go out to his car, find his tape recorder and a tape, bring them back in, and "expose him to something that might inhibit him from talking to me...." Thus, Detective Curry's express objective was to elicit incriminating responses, and he believed he was more likely to elicit such responses by not recording the conversation. Clearly, Killian was interrogated.
The next issue is whether Killian was in custody when he was interrogated. "The question of whether a suspect is in custody is a mixed question of law and fact." Ramirez v. State, 739 So.2d 568, 574 (Fla.1999), cert. denied, ___ U.S. ___, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000), citing Thompson v. Keohane, 516 U.S. 99, 102, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) ("We hold that the issue whether a suspect is `in custody,' and therefore entitled to Miranda warnings, presents a mixed question of law and fact qualifying for independent review."). The ultimate inquiry when determining whether a person was in custody "is whether `a reasonable person placed in the same position would believe that his or her freedom of action was curtailed to a degree associated with actual arrest.'" Mansfield v. State, 758 So.2d 636, 644 (Fla.2000), citing Ramirez, 739 So.2d at 573.
In Ramirez we formally acknowledged that the determination of whether a reasonable person in the suspect's position would consider himself in custody is *1214 guided by the consideration of four factors:
(1) the manner in which police summon the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect is confronted with evidence of his or her guilt; (4) whether the suspect is informed that he or she is free to leave the place of questioning.
Mansfield, 758 So.2d at 644, citing Ramirez, 739 So.2d at 574.
Application of the Ramirez factors to this case leads to the conclusion that Killian was in custody for purposes of Miranda. It is not disputed that for at least the majority of the time that Killian was waiting under the tree, whether he was standing there by direction of the officers or on his own volition, either Detective Curry or another detective was keeping an eye on him. The reason given was officer safety. Whatever the reason, we do not believe that a reasonable person would believe he was free to leave the premises when he was being watched almost continuously. In light of the fact that the officers had a search warrant, we believe it is irrelevant whether Killian invited Detective Curry inside the house, because the detective was legally allowed to go inside the house regardless of an invitation to do so. Although the questioning of Killian by Detective Curry occurred in Killian's home, that home was being searched pursuant to a warrant by four other law enforcement officers. In finding that the environment of the conversation was hospitable, the trial court pointed out that Killian was "permitted" to drink a beer. Permission to drink a beer in one's own home is not necessary unless there is some restraint on one's freedom. Regardless of whether Killian sought permission to drink the beer, Detective Curry revealed in his testimony that he did not want to do anything to inhibit Killian from talking. If anything, drinking a beer would lessen Killian's inhibitions. Thus, we do not view Killian's drinking a beer as indicative of him not being in custody for Miranda purposes. Finally, it is clear from Detective Curry's testimony that Killian was confronted with the allegations of the child victim during the conversation, which lasted for between thirty minutes and two hours. It is undisputed that Killian was never informed that he was free to leave.
Accordingly, we hold that Killian was subjected to a custodial interrogation without having been advised of his Miranda rights, and the trial court reversibly erred in denying his motion to suppress statements made during that interrogation.
In the event that Killian is retried, we note that the trial court did not err in denying his motion for judgment of acquittal of the charge of use of a child in a sexual performance because exhibition before an audience is not a required element of this offense. See Ladd v. State, 715 So.2d 1012 (Fla. 1st DCA 1998); Schmitt v. State, 563 So.2d 1095 (Fla. 4th DCA 1990), modified on other grounds, 590 So.2d 404 (Fla.1991); Firkey v. State, 557 So.2d 582 (Fla. 4th DCA 1989), disapproved of on other grounds, Wilson v. State, 635 So.2d 16 (Fla.1994). We also note that a trial court's ruling on a motion in limine does not carry over to a retrial. See Strange v. State, 579 So.2d 859 (Fla. 1st DCA 1991). Finally, we strongly caution prosecutors against making arguments that shift the burden of proof and that suggest that a victim should be believed because the State believed the victim and would not have filed charges otherwise.
Reversed and remanded.
BLUE, A.C.J., and WHATLEY, J., and SCHEB, JOHN M., (Senior) Judge, Concur.
NOTES
[1] He was convicted of these offenses upon retrial after this court reversed his previous convictions and remanded for a new trial. See Killian v. State, 730 So.2d 360 (Fla. 2d DCA 1999).
[2] Detective Curry never explained the reason for safety concerns with regard to 68-year-old Killian.
[3] Killian stated that he had drunk half of a beer out in the garage before the officers arrived.