NORTHCUTT, Judge,
Dissenting.
I would reverse Jenrette-Smith’s convictions because the State did not prove that the offending photographs were ever exhibited before an audience, an express element of the offense as defined by the statute. Failing that, I would reverse the reclassification of those convictions from second-degree felonies to first-degree felonies because the State did not prove that when committing the offenses Jenrette-Smith possessed any offending images. The majority’s determination to affirm on both issues perpetuates a line of decisions by district courts of appeal bent on disregarding a clear legislative directive governing the interpretation of criminal statutes, notwithstanding Florida Supreme Court decisions holding that compliance with that directive is mandatory.
I. THE MANDATORY RULE OF CONSTRUCTION
Section 775.021(1) states: “The provisions of this [criminal] code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.” This straightforward direction is a codification of the rule of lenity, which has deep roots in our common law. The rule is *432 “[o]ne of the most fundamental principles of Florida law.” Perkins v. State, 576 So.2d 1310, 1312 (Fla.1991). It derives from the due process requirement that “criminal statutes must say with some precision exactly what is prohibited.” Id.
Indeed, our system of jurisprudence is founded on a belief that everyone must be given sufficient notice of those matters that may result in a deprivation of life, liberty, or property. For this reason,
[a] penal statute must be written in language sufficiently definite, when measured by common understanding and practice, to apprise ordinary persons of common intelligence of what conduct will render them liable to be prosecuted for its violation.
Gluesenkamp v. State, 391 So.2d 192, 198 (Fla.1980), cert. denied, 454 U.S. 818, 102 S.Ct. 98, 70 L.Ed.2d 88 (1981) (citations omitted).
576 So.2d at 1312 (citations omitted). Put another way, “if there is a reasonable construction of a penal statute favorable to the accused, the court must employ that construction.” Wallace v. State, 860 So.2d 494, 497-98 (Fla. 4th DCA 2003).
The supreme court has recognized that in Florida the rule of lenity is a statutory directive, and it has consistently adhered to the rule even in the face of contrary reasonable interpretations produced by other principles of statutory construction. For example, in State v. Huggins, 802 So.2d 276 (Fla.2001), the court considered the rulings of the trial court and the Fourth District that a defendant who had burgled an unoccupied dwelling was not subject to enhanced sentencing under the Prison Releasee Reoffender Punishment Act. The statute defined “prison releasee reoffender” as, among other things, a defendant who committed a “[bjurglary of an occupied structure or dwelling.” § 775.082(8)(a)(1)(q), Fla. Stat. (1997). The court noted that the definition was ambiguous because it was unclear whether the word “occupied” qualified only the word “structure,” as advocated by the State, or qualified both “structure” and “dwelling,” as contended by the defendant. 802 So.2d at 277. The court acknowledged that the State’s interpretation based on the statutory construction principle of “nearest antecedent,” i.e., that an adjective qualifies only the word nearest to it, and on references to other pertinent statutes, was not unreasonable. Id. However, because neither the State’s nor the defendant’s interpretation was unreasonable, under the rule of lenity the court was “bound” to construe the language most favorably to the defendant. Id. at 279.
The issue in Polite v. State, 973 So.2d 1107 (Fla.2007), was the extent to which the phrase “knowingly and willfully” qualified the elements of the crime of resisting an officer with violence. Section 843.01, Florida Statutes (2003), provided that “[wjhoever knowingly and willfully resists, obstructs, or opposes any officer ... in the execution of legal process or in the lawful execution of any legal duty” by doing violence to the officer was guilty of a third-degree felony. The State contended that “knowingly and willfully” only qualified the verbs “resists, obstructs, or opposes.” The defendant maintained that it applied to the entire phrase, including the victim’s status as an officer. The supreme court held that the rule of lenity mandated the latter construction because it was most favorable to the defendant. 973 So.2d at 1112. The court reached this conclusion before consulting rules of statutory construction which — “even beyond this fundamental tenet of Florida law regarding the construction of criminal statutes, which weighs in favor of the defendant” — additionally confirmed that the accused’s *433 knowledge of the victim’s status as an officer was an element of the crime. Id.
In Kasischke v. State, 991 So.2d 803 (Fla.2008), the court addressed the following mandatory condition in section 984.03(5)(a)(7), Florida Statutes (1999), that was required to be imposed on sexual offenders who were sentenced to probation or community control:
Unless otherwise indicated in the treatment plan provided by the sexual offender treatment program, a prohibition on viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs, or computer services that are relevant to the offender’s deviant behavior pattern.
991 So.2d at 806. The State maintained that the phrase “relevant to the offender’s deviant behavior pattern” applied only to “sexually stimulating visual or auditory material,” such that the offender was to be barred from possessing all obscene or pornographic material and, additionally, was to be barred from possessing sexually stimulating visual or auditory material that was relevant to the offender’s deviant behavior pattern. The defendant argued that the phrase qualified “obscene, pornographic, or sexually stimulating visual or auditory material,” such that the condition only forbade any such material that was relevant to his deviant behavior. Id. at 807.
Recognizing that the statute was ambiguous, the court rebuffed the State’s arguments based on the law’s legislative history, deeming the efficacy of such endeavors in aid of statutory construction to be questionable generally and inconclusive in that specific case. “In any event,” the court wrote, “a defendant on probation or community control cannot be expected to research staff analyses to determine whether particular conduct is permitted.” Id. at 810. The court also found the rules of statutory construction, specifically the “doctrine of the last antecedent,” unhelpful. Mat 812-13.
The Kasischke court concluded that the rule of lenity mandated the construction of the statute that was most favorable to the accused. Thus, it held that the phrase “relevant to the offender’s deviant behavior pattern” qualified all of the prohibitions in the statute. Id. at 807, 815. “In Florida,” the court observed, “the rule [of lenity] is not just an interpretive tool, but a statutory directive.” Id. at 814; cf. Perkins, 576 So.2d at 1314 (observing that “[t]he state’s reliance on common law rules of construction such as ejusdem generis must yield to the rule of strict construction”).
In Jenrette-Smith’s case, the statutory rule of lenity is implicated both in the statute defining the substantive offense of which he was convicted, section 827.013, and in the statute under which that offense was reclassified to a first-degree felony, section 775.0847. The majority’s decision to affirm the convictions and reclassifica-tions violates the legislative directive as to the construction of those statutes and it conflicts with Florida Supreme Court decisions holding that the directive is mandatory.
II. CONVICTIONS UNDER SECTION 827.071(3)
Vis-a-vis the offense of promoting a sexual performance by child, the statutory rule of lenity is brought into play by two ambiguities stemming from the definition of the term “performance” as used in section 827.071(3). In section 827.071(l)(b), “performance” is said to mean “any play, motion picture, photograph, or dance or any other visual representation exhibited before an audience.” The first ambiguity *434 relates to the extent to which the phrase “exhibited before an audience” qualifies the balance of the definition. The statute might be read to mean that only “any other visual representation” must be exhibited before an audience to violate the statute. On the other hand, it is also reasonable to interpret the phrase as qualifying the entire list of offending activities, such that a performance is defined as “any play, motion picture, photograph, or dance or any other visual representation” that is “exhibited before an audience.” Because the latter construction narrows the scope of the criminal prohibition, and thus is most favorable to the accused, it is the one that must prevail. Simply put, then: exhibition before an audience is an element of the crime defined in the statute.
Note that the question is not whether this interpretation is the most reasonable of the possibilities. Under section 775.021(1), courts must apply the rule of lenity when statutory language merely “is susceptible of differing constructions.” In that case, the statute “shall be construed most favorably to the accused.” Id. Again, as the Florida Supreme Court has recognized, this rule is not merely an aid to statutory construction to be weighed along with others. It is a statutory directive, which we must obey even if construction aids such as the doctrine of the last antecedent could support a different, reasonable interpretation. See Kasischke; Polite; Huggins.
When interpreting the promoting-a-performance statute, the district courts of appeal have violated the statutory rule of lenity at every turn. Rather than interpret an ambiguously worded element of the crime in accordance with the rule, the district courts have simply dispensed with the element altogether.
The line of misguided case law began in Firkey v. State, 557 So.2d 582 (Fla. 4th DCA 1989), disapproved on other grounds by Wilson v. State, 635 So.2d 16 (Fla.1994), in which a woman accidently viewed a videotape the defendant had made of his sexual encounter with the woman’s nine-year-old daughter. The Firkey court held that the making of the videotape in itself was sufficient to violate the statute. Id. at 584. Firkey, in turn, was authority for the Fourth District’s later holding in Schmitt v. State, 563 So.2d 1095 (Fla. 4th DCA 1990), approved in part, quashed in part on other grounds, 590 So.2d 404 (Fla.1991), that a conviction for promoting a sexual performance by a child could be predicated on a videotape that had never been shown to an audience.
In Ladd v. State, 715 So.2d 1012 (Fla. 1st DCA 1998), the First District rejected the defendant’s challenge to a jury instruction that stated:
The making of a motion picture or videotape which includes sexual conduct by a child less than 18 years of age is in and of itself sufficient to constitute performance even though the motion picture or videotape had never been exhibited before an audience. An individual can constitute an audience even if that individual accidentally played the tape and viewed the performance.
Id. at 1015. The Ladd court supported its conclusion that the instruction “correctly state[d] the law” simply by citing to Schmitt and Firkey. Id. Similarly, this court in Killian v. State, 761 So.2d 1210, 1214 (Fla. 2d DCA 2000), held that exhibition before an audience is not a required element of the offense of using a child in a sexual performance. The court offered no rationale for this holding beyond its citation to Ladd, Schmitt, and Firkey. Id. at 1214.
More recently, in Bishop v. State, 46 So.3d 75 (Fla. 5th DCA 2010), the Fifth District reviewed the convictions of a de *435 fendant who had videotaped his molestation of an eight-year-old girl in a secluded spot on the grounds of a resort hotel. The defendant was spied by a hotel guest and chased from the scene. As he fled, he managed to delete the video from his camera. He was later convicted of several offenses, including using a child in a sexual performance. On appeal, the defendant challenged his conviction on that charge because there was no evidence that the performance was exhibited before an audience. The Bishop court cast aside the argument. “Florida courts have uniformly construed section 827.071 to permit a conviction even where the video tape of the child’s engagement in sexual conduct is not shown to third persons.” Id. at 79 (citing Ladd, Killian, Schmitt, and Firkey). Further, “[a]n ‘audience’ can consist of a single individual and that individual can be the defendant.” Id.
Contrary to Bishop’s assertion that Florida’s courts have “uniformly construed” section 827.071(l)(b), only one of them, the Fourth District in Firkey, actually engaged in what might be termed a construction of the statute. In all the other cases the courts merely cited to Fir-key and its progeny for the bald proposition that exhibition before an audience is not necessary to a conviction.
For its part, the Firkey court acknowledged that the definition of “performance” set forth in section 827.071(l)(b) “might be ambiguous.” 557 So.2d at 584. But, the court wrote, “we choose to interpret it to mean that the making of such a motion picture is in and of itself sufficient when any of the participants is unaware of what is going on.” Id. at 584.
Obviously, the recording is made with the intention of being replayed; otherwise, the taping has no purpose. Whoever witnesses the replay constitutes an audience. See State v. George, 717 S.W.2d 857 (Mo.App.1986). The natural mother constituted an audience when she accidently played the tape and viewed the performance which led her to call the police. It is obvious that the child, albeit unwittingly, was induced to become a participant in a sexual performance and we are confident that the legislature did not intend that the creator of such a motion picture, complete with sound, should escape prosecution because he had not, as yet, had time to exhibit his vile handiwork.
As the supreme court has made clear, however, the Firkey court was not free simply to choose the interpretation of the statute that it considered to be the most palatable, or even the one that it believed to be the most sensible. See Kasischke, 991 So.2d at 814-15 (observing in regard to ambiguous criminal statute that we “cannot simply choose our preferred construction”). Rather, when interpreting an ambiguous criminal statute, the court is required by law to employ the construction that most favors the accused. § 775.021(1). The Firkey court’s failure to do so could not be justified by its supposition that the legislature would not wish a perpetrator to go unpunished if he had not yet exhibited the offending depiction. As the Perkins court put it, “[w]ords and meanings beyond the literal language may not be entertained nor may vagueness become a reason for broadening a penal statute.” 576 So.2d at 1312.
Whereas the ambiguity just discussed involved the scope of the phrase “exhibited before an audience” as a qualifier of other language in the definition, the remaining issue turns on the meaning of the phrase itself. In Firkey, the court posited that the young victim’s mother “constituted an audience when she accidently played the tape and viewed the performance.” As I have noted, other Florida courts have gone *436 so far as to assert that the performance need not be observed by anyone other than the perpetrator or the victim — or, indeed, by anyone at all. Under this view, the crime is complete when a photograph is created, regardless of whether it is intended to be or is disseminated.
But, in common understanding and practice, exhibiting to an audience connotes volitional acts aimed at displaying something to someone else. Thus, in this context the verb exhibit means “to offer or expose to view; present for inspection ... to place on show ... to make or give an exhibition; present something to public view.” Random House Dictionary of the English Language 678 (2d ed. unabridged). The noun audience means “the group of spectators at a public event; listeners or viewers collectively, as in attendance at a theater or concert [;] ... the persons reached by a book, radio or television broadcast, etc.; ... a regular public that manifests interest, support, enthusiasm, or the like; a following.” Random House Dictionary 135; cf. Perkins, 576 So.2d at 1313 (referring to dictionary to discover ordinary and plain meaning of word used in statute).
Certainly, to hold that a depiction has been “exhibited before an audience” when seen only by its creator or participant, or accidently by a third person who was not meant to see it, or by no one, requires an expansive application of the phrase beyond its common and ordinary meaning— in violation of the statutory direction to construe criminal statutes strictly. If the legislature had intended the statute to encompass either viewings solely by the depiction’s creator or participant, or unintended sightings or viewings by third persons, it easily could have employed language that outlawed the promotion of performances that are “viewed” or “seen” or “observed” by any “person.” Cf. Kasischke, 991 So.2d at 813 n. 7 (describing ease with which legislature could have phrased statute to convey meaning advocated by State). And if the legislature had intended this crime to be complete upon creation of the depiction without it being seen by anyone at all, it certainly would have completely omitted the reference to exhibitions before an audience. It did not, of course, and the courts are not at liberty simply to dispense with the phrase. Larimore v. State, 2 So.3d 101, 106 (Fla.2008) (“words in a statute should not be construed as mere surplusage”) (citation and internal quotation marks omitted).
In short, no reasonable construction of the phrase “exhibited before an audience” can support the meaning ascribed to it by Firkey and its progeny. But even if it were reasonable to construe the statute as broadly as the Firkey court would have it, it is also reasonable to interpret the prohibition as contemplating only intentional presentations to third persons who intend to see them and are meant to do so. Under the lenity statute, and under well-established Florida Supreme Court precedents, we are obliged to apply the latter construction.
In Jenrette-Smith’s case, the evidence on this point reflected only that M.S. viewed the offending photographs when they were retrieved from the drugstore. The evidence did not disclose whether she did so intentionally, incidentally, at someone’s behest, or surreptitiously, and there was no proof that the photographs were shown to or viewed by anyone else. There was no evidence even that Jenrette-Smith himself had viewed them. M.S.’s testimony that Jenrette-Smith paid to have the photographs developed and printed did not prove that he viewed them or even physically handled them. (M.S. could not recall who carried them from the store.) And *437 there was no testimony that Jenrette-Smith was the person who placed the photographs under the couple’s mattress.[2] Therefore, the State did not prove that the photographs were exhibited before an audience, as required by section 827.071(l)(b) and (3).
III. RECLASSIFICATION UNDER SECTION 775.0847(2)
The majority’s error in affirming Jen-rette-Smith’s convictions is compounded by its determination to uphold the reclassification of his offenses. The reclassification statute, section 775.0847(2), provides:
(2) A violation of s. 827.071 ... shall be reclassified to the next higher degree as provided in subsection (3) if:
(a) The offender possesses 10 or more images of any form of child pornography regardless of content; and
(b) The content of at least one image contains one or more of the following:
[[Image here]]
3. Sexual battery involving a child.
In this case, the State’s evidence did not show that Jenrette-Smith ever possessed any of the images at issue.
The majority makes two arguments on this point. For one thing, it maintains that Jenrette-Smith at least jointly possessed the images when he and M.S. retrieved the printed photographs from the drugstore and when the prints were kept beneath the mattress that he shared with M.S. But for an accused to possess contraband, whether singly or jointly, he must “have personal charge of or exercise the right of ownership, management, or control over the thing possessed.” Fla. Std. Jury Instr. (Crim.) 25.7. There was no proof that Jenrette-Smith ever had or exercised ownership, management, or control over the photographs after they were developed. M.S. testified merely that the two of them went to the drugstore together when the prints were retrieved and that Jenrette-Smith paid the processing charge. She did not testify that Jenrette-Smith ever held, handled, or looked at them, or that he ever asserted any dominion over them. There was no evidence that he placed the photographs under the couple’s mattress or directed M.S. to do so, or even that he knew they were there. The elusive James, who delivered the photographs to the authorities, did not appear at trial to explain how he obtained them. At most, then, the evidence established that Jenrette-Smith was in M.S.’s company when she possessed the photographs. But his mere proximity to the photographs simply was insufficient to establish his possession of them, joint or otherwise. See Bennett v. State, 46 So.3d 1181 (Fla. 2d DCA 2010) (“Mere proximity to contraband is not enough.”)[3]
Regardless, under the majority’s theory that the underlying offense of promoting a performance was complete when Jenrette- *438 Smith tripped the shutter on the camera, his possession of the developed and printed photographs at some point afterward could not support the reclassification of those offenses.
The majority’s other assertion on this issue is that Jenrette-Smith possessed the “images” at the moment he took them. It cites no authority for that proposition. But when making this argument the State relied on Schneider v. State, 700 So.2d 1239 (Fla. 4th DCA 1997), in which the Fourth District held that exposed but undeveloped film inside a camera is a “photograph” for purposes of section 827.071(5)’s prohibition of knowingly possessing a photograph that includes sexual conduct by a child. Said the Schneider court:
Webster’s defines the term photograph as “a picture or likeness obtained by photography” with the root word photography defined as “the art or process of producing images on a sensitized surface (as a film) by the action of radiant energy and esp. light.” Merriam Webster’s Collegiate Dictionary 857 (10th ed. 1993)(emphasis added). Hence, by definition, a photograph is the exposure of the film at the time the picture is snapped. A hard copy of the photograph is a print and the developed film would be a negative.
Schneider, 700 So.2d at 1240.
That is an absurd proposition: the fact that cows eat corn does not mean that corn qualifies as hamburger. It is just as absurd to suggest that a single step in the photographic process, the casting of reflected light on chemical-coated celluloid, constitutes what is commonly understood to be a photograph. Again, penal statutes must be written in sufficiently definite language, “when measured by common understanding and practice,” to apprise persons of ordinary intelligence of what conduct would subject them to criminal punishment. Perkins, 576 So.2d at 1312. Treating undeveloped film as a “photograph” violates that principle.
Be that as it may, even if the Schneider court’s strained interpretation of the word “photograph” were accurate, the State’s reliance on it would be misplaced for two reasons. For one thing, the reclassified offense hinges on the accused’s possession of ten or more prohibited images when he commits the underlying offense. If Jen-rette-Smith committed the offense simply by tripping the shutter of his camera, and if he possessed photographs simply by possessing exposed film, he could not have possessed ten such photographs when he took the first ten shots; when taking the tenth shot he only had nine exposures in the camera. In other words, no more than four of the fourteen counts for which Jen-rette-Smith was convicted could be reclassified as first-degree felonies. Thus it was error for the trial court to reclassify all fourteen of them, and it is error for this court to affirm those reclassifications.
The other reason that the State is mistaken to rely on the Schneider court’s broad definition of “photograph” is that the reclassification statute does not employ that term. Rather, the statute reclassifies child pornography offenses based on the offender’s possession of ten or more “images of any form of child pornography.” § 775.0847(2)(a) (emphasis added).
An image is “a physical likeness or representation of a person, animal, or thing, photographed, painted, sculptured, or otherwise made visible.” Random House Dictionary 955. Exposed but undeveloped film, as such, is not an image; it bears no likeness to nor makes a visual representation of any subject. It cannot because the mere exposure of the film to light — or rather the exposure of the silver halide crystals suspended in the film’s emulsion layer — induces only one of sev *439 eral chemical actions that must occur in order to transform the film into an image. Although exposed silver halide crystals can be made to reduce to particles of metallic silver that form an image during development, the exposure itself produces no detectable change. See generally The Negative, The Ansel Adams Photography Series 2, ch. 2, “Light and Film” (Ansel Adams 1981). Only when all of the necessary chemical actions have been made to occur-when the film is “processed” or “developed” — is the film transformed into a likeness or visual representation of a subject, i.e., an image. This image may be “positive,” in the case of slide film, or it may be “negative,” from which a paper print may be made. Id.[4]
Thus, regardless of whether the undeveloped film in Jenrette-Smith’s camera can be said to have contained photographs, as maintained by the State, it did not contain images. The film simply could not produce images until it was processed. The majority’s assertion that it is immaterial that “chemical processes were required to render those images visible to the naked eye” disregards the meaning of the term “image” in common parlance and, thus, violates the statutory rule of lenity.
The possession of the requisite number of prohibited images is a necessary element of the reclassified first-degree felony of promoting a sexual performance by a child. See Grinage v. State, 641 So.2d 1362, 1365 (Fla. 5th DCA 1994) (holding that statute reclassifying attempted murder to life felony when victim is a law enforcement officer created new substantive offense, of which knowledge of victim’s status as officer was a necessary element), approved by Thompson v. State, 695 So.2d 691 (Fla.1997); Green v. State, 18 So.3d 656, 659 n. 4 (Fla. 2d DCA 2009) (noting that trial court fundamentally erred by reclassifying the level of offense when evidence did not establish necessary element). A defendant’s conviction of an offense when the evidence failed to prove that the offense occurred is fundamental error. F.B. v. State, 852 So.2d 226, 230 (Fla.2003); Rodriguez v. State, 964 So.2d 833, 836 n. 1 (Fla. 2d DCA 2007); Green, 18 So.3d 656.
IV. CONCLUSION
The majority’s interpretation of the statutes at issue here dispenses with essential elements necessary to convict under the promoting-a-performance statute or to reclassify offenses under the reclassification statute. Ignoring those elements violates the clear legislative direction that criminal statutes must be strictly construed and interpreted most favorably to defendants. Further, it disregards supreme court decisions holding that the legislative directive is binding on the courts, something this court is powerless to do. See Hoffman v. Jones, 280 So.2d 431, 433-34 (Fla.1973); Roberts v. State, 199 So.2d 340, 342 (Fla. 2d DCA 1967). For these reasons, I dissent.

. The majority’s assertion that Jenrette-Smith was the one who placed the photographs under the mattress is wholly unsupported by the evidence at trial.

. The majority’s reference to "M.S.’s testimony that [Jenrette-Smith] kept the photographs 'to himself ” is misleading because it lifts a snippet of testimony and twists it entirely out of its context. M.S. was cross-examined about the fact that the photographs were never shown to anyone. Thus, she agreed that “Mr. Jenrette, to your knowledge, never put those on the internet,” and that ”[h]e never had a big party at the house and invited people over to look at them, put them on a big screen.” Then: "In fact, he kind of kept them to himself, right?” "Yes, sir.” This proof that the photographs were not exhibited before an audience fell well shy of demonstrating that Jenrette-Smith had "personal charge of or exercise[d] the right of ownership, management, or control over” the photographs. Fla. Std. Jury Instr. (Crim.) 25.7.

. As observed on the research and development webpage of the Eastman Kodak Company. “[t]he silver halide emulsion literally 'sets the scene' for the subsequent complex chemical processes that lead to the formation of a colorful image.” http://www.kodak.com/US/ en/c orp/researchDevelopment/whatWe-Do/technology/ chemistiy/silver.shtml (last visited May 3, 2013).