NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DANIEL ENRIQUE GUEVARA-VILCA,  )
                               )
           Appellant,          )
                               )
v.                             )        Case No. 2D11-5805
                               )
STATE OF FLORIDA,              )
                               )
           Appellee.           )
_____)

Opinion filed April 10, 2015.

Appeal from the Circuit Court for Collier
County; Frederick R. Hardt, Judge.

Marc David Seitles and Ashley Litwin of
The Law Offices of Marc David Seitles,
P.A., Miami, and Marcia J. Silvers of
Marcia J. Silvers, P.A., Miami, for
Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Diana K. Bock,
Assistant Attorney General, Tampa,
for Appellee.


NORTHCUTT, Judge.

Daniel Guevara-Vilca appeals his convictions for possession of child

pornography. Owing to a discovery violation by the State, we reverse and remand for a

new trial.

Evidence at Guevara-Vilca's jury trial reflected that in early 2010, a detective with the Collier County Sheriff's Office was investigating the dissemination of child pornography through Internet peer-to-peer file sharing networks. The detective testified that participants in such networks could search and download files from other participants' computers. In this fashion, the detective discovered and downloaded a file containing a video of children engaged in sex acts. By issuing a subpoena to the local Internet service provider, investigators were able to identify the account and location of the computer from which the file was downloaded. The detective obtained a search warrant for that address.

The implicated residence was a two-bedroom apartment occupied by Guevara-Vilca, then twenty-four years old, along with his mother and brother. All of them were home when the detective arrived to execute the search warrant accompanied by four other law enforcement officers and a sheriff's employee. The officers "put" the family on a couch in the living room, read the warrant, and searched the apartment. The officers found several computers in the home. After they were photographed in place, the detective took the computers to the kitchen for a preliminary forensic examination. Just one of them contained offending images, a laptop found with other computer equipment in a rear bedroom.

The detective recounted to the jury that when the police had first entered the apartment, Guevara-Vilca walked out of that bedroom. Later, as the detective emerged from the bedroom with the laptop, he asked Guevara-Vilca if it was the computer Guevara-Vilca usually used. Guevara-Vilca said that it was. Defense counsel immediately objected because the State had not previously disclosed this admission by

Guevara-Vilca. Counsel further noted that the detective had not mentioned the statement in his deposition. The trial court sent the jury out and conducted a Richardson[1] hearing.

The prosecutor advised the court that he had been aware of the statement and thought it had been disclosed. He acknowledged that the failure to disclose it was a discovery violation, albeit an inadvertent one. The court and attorneys discussed the potential prejudice, primarily focusing on whether there were grounds to suppress the statement because it had been elicited without Miranda[2] warnings. Guevara-Vilca subsequently had given a recorded statement to the detective after he waived his rights, and defense counsel had not challenged its admissibility. During the Richardson hearing, defense counsel was permitted to question the detective about any other statements Guevara-Vilca might have made before receiving Miranda warnings, but there were none. Defense counsel withdrew his motion for mistrial, and the court found that the violation was inadvertent and caused no procedural prejudice to the defense.

Defense counsel then sought to further question the detective for purposes of determining whether there was a Miranda violation. The court refused to allow further inquiry but stated that it would permit the defense to "brief it." The court also noted that if there was a Miranda violation, the fruit-of-the-poisonous-tree doctrine might be implicated. After a ten-minute recess, the court asked defense counsel if he had anything else for the court to consider. Counsel offered nothing further.

---

[1]Richardson v. State, 246 So. 2d 771 (Fla. 1971).

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

- 3 -

During the trial, the State introduced 206 photographs and 248 videos containing child pornography, each of which was charged in a separate count. The file names generally contained descriptive terms.[3] All of the material had been downloaded to the laptop from January 2009 to January 2010 using LimeWire, a file-sharing program. The files were found in thirteen different folders on the computer, including the recycle bin. One of the testifying detectives opined that the folders did not appear to be the default folders established by the peer-to-peer software; instead, he thought they were folders created by the person who downloaded the material. The software allowed a user to place material in folders that either were or were not accessible by other network participants. The material that was initially downloaded by the Sheriff's detective had been placed in a shareable folder.

The bedroom from which the laptop was seized was shared by Guevara-Vilca and his brother, who also sometimes slept in the other bedroom. The computer was registered to Guevara-Vilca and contained one user account, also in his name. It had more than one email profile, one of which was in Guevara-Vilca's name. The State's witnesses could not recall the details of the other email accounts but testified that the identities did not reflect the brother's name. There were also four nonsexual pictures saved on the computer that showed Guevara-Vilca, and the pictures had the word *me* in their titles.

---

[3]Less graphic file names included, for example, terms like "preteen boys sex," "Ten year old," "Seven year old . . . masturbation preteen," "Boy kiddie pedo," and "Junior kiddie sex." Many file names were more graphic. Suffice it to say that most of the file names suggested the content.

Guevara-Vilca's recorded statement, given after he waived his <u>Miranda</u> rights, was placed in evidence and played for the jury. Guevara-Vilca stated that his computer was used only by him. The others in the house had their own computers. Although he acknowledged using peer-to-peer network software to download music and pornography, he asserted that he never knowingly downloaded files that depicted children. Guevara-Vilca explained that he did not always open downloaded files right away; he sometimes downloaded material and looked at it later. He said that he deleted files if he discovered that they contained child pornography. He claimed that he paid no attention to the file names, and he did not search for pornography by age. But he admitted that he sometimes used *boys* or *girls* in his search terms.

Guevara-Vilca said that he downloaded pornography usually after 10 p.m., when the other householders were sleeping or busy on their own computers. He estimated that the last time he had downloaded something and then realized that it depicted a child was about two weeks before the execution of the search warrant. Guevara-Vilca was arrested at the conclusion of the interview.

Contrary to Guevara-Vilca's statement to the detective, his mother testified at trial that the laptop was used by other family members and by friends. She said that she used it herself to do general searches and to engage in online video chats with her mother, who lived in Peru.

The jury returned guilty verdicts on all 454 counts. Although Guevara-Vilca had no prior criminal record, under his sentencing scoresheet the minimum permissible sentence was 152.88 years in prison; the scoresheet contained enough

points to permit a sentence as severe as life imprisonment. The trial court sentenced Guevara-Vilca to 454 concurrent life terms.

Guevara-Vilca raises multiple issues on appeal. We agree with his assertion that the trial court erred in its handling of the State's discovery violation. The State was required to disclose Guevara-Vilca's pre-Miranda response to the detective's question, see Fla. R. Crim. P. 3.220(b)(1)(C), and it admittedly did not do so. During the ensuing inquiry, the court was obliged to determine whether the violation was inadvertent or willful, trivial or substantial, and, ultimately, whether it prejudiced the defense in the preparation of its case. See Richardson v. State, 246 So. 2d 771, 775 (Fla. 1971). When a trial court concludes that a discovery violation did not prejudice the defense, the circumstances of that lack of prejudice must affirmatively appear in the record. Id.

We agree with the court's conclusion that the violation was inadvertent rather than willful. The State argued below that the violation was trivial because the undisclosed statement was repeated in Guevara-Vilca's recorded statement. Although the court never expressly ruled on this point, it concluded that the defense suffered no procedural prejudice as a result of the nondisclosure. This was incorrect.

In this context, the defense is prejudiced

if there is a reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred. Trial preparation or strategy should be considered materially different if it reasonably could have benefited the defendant. In making this determination every conceivable course of action must be considered.

- 6 -

State v. Schopp, 653 So. 2d 1016, 1020-21 (Fla. 1995), holding clarified by Scipio v. State, 928 So. 2d 1138 (Fla. 2006). As the trial court recognized, suppression of Guevara-Vilca's earlier statement might have led to suppression of his recorded statement, as well. See, e.g., State v. Pitts, 936 So. 2d 1111, 1133 (Fla. 2d DCA 2006) (noting that post-Miranda statements might be subject to suppression, under Missouri v. Seibert, 542 U.S. 600 (2004), if the defendant had made previous statements during a custodial interrogation without Miranda warnings).

Defense counsel explained that he had not previously moved to suppress the recorded statement because Guevara-Vilca had waived his Miranda rights at the beginning of the interview. If the earlier statement had been disclosed by the State, there is a reasonable possibility that defense counsel's trial preparation and strategy would have been materially different because counsel could have pursued the suppression of all statements made by Guevara-Vilca. It is unclear, even at this juncture, whether the initial statement was made during a custodial interrogation. See Ramirez v. State, 739 So. 2d 568, 573 (Fla. 1999) (explaining that a custodial interrogation occurs with an express question or any words or actions by the police that reasonably appear designed to elicit an incriminating response at a time when a reasonable person would not have felt free to leave); see also Killian v. State, 761 So. 2d 1210 (Fla. 2d DCA 2000) (holding that custodial interrogation occurred during execution of search warrant at defendant's home). The record cannot be said to affirmatively reflect that the discovery violation caused no prejudice to the defense; to the contrary, the record strongly supports the opposite conclusion. See Richardson, 246 So. 2d at 775. Thus we reject the trial court's ruling in this regard.

- 7 -

We reverse Guevara-Vilca's convictions and remand for a new trial. This renders moot, for now, the sentencing issue raised on appeal. Guevara-Vilca argued, below and on appeal, that a life sentence violated the constitutional prohibition against cruel and unusual punishment. See Amends. VIII, XIV, U.S. Const.; Art. I, § 17, Fla. Const.; see also Solem v. Helm, 463 U.S. 277 (1983) (holding that the Eighth Amendment proscribes sentences that are grossly disproportionate to the crime and setting forth objective criteria for analyzing proportionality of prison terms). Our analysis of the sentence at this point would be dicta, and it is not our intention to prejudge an issue that may be raised in a subsequent appeal if Guevara-Vilca is convicted on remand. But the issue, if raised, deserves serious consideration by the sentencing court. Indeed, it is noteworthy that if Guevara-Vilca had been charged with possession of child pornography with intent to promote, he could have been convicted and sentenced for only one second-degree felony count rather than 454 third-degree felony counts. See Chesser v. State, 148 So. 3d 497, 499 (Fla. 2d DCA 2014) ("The dates that the images were created was not determinative; if law enforcement discovered all the images in one search, they supported only one conviction under section 827.071(4).").

Also, if Guevara-Vilca is again convicted and sentenced on remand, defense counsel will not be limited to the arguments previously raised and he may, if justified, advance grounds for a downward departure. Guevara-Vilca's mother testified at sentencing that her son was born prematurely and that, at ages five and around thirteen, he had surgeries to remove brain tumors. Expert testimony may illuminate the ramifications of this medical history. Guevara-Vilca stated in his interview that while he

graduated from high school, his grades were "D's and E's." Cf., e.g., § 921.0026(c), (d), Fla. Stat. (2008) (providing for downward departures when defendant's capacity to appreciate criminal nature of conduct or conform to law was substantially impaired; or when defendant requires, and is amenable to, treatment for mental disorder unrelated to substance addiction).

Reversed and remanded.

ALTENBERND and CRENSHAW, JJ., Concur.